IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

## AT CASSVILLE,

## APRIL TERM, 1851.

Present—JOSEPH H. LUMPKIN, ⎫
       HIRAM WARNER, ⎬ Judges.
       EUGENIUS A. NISBET, ⎭

~~~~~~~~~~~~~~~~

No. 88.—LEWIS HOUSE, *et al.* plaintiffs in error, *vs.* AARON PAL-
MER, defendant in error.

[1.] A reservation in a deed for the benefit of the grantee, must be strictly complied with.

[2.] If the vendor in selling a lot of land, retains the right to test it for gold within eighteen months, and if found profitable to work it, he must make the examination and give notice of the result within the time limited; otherwise, the privilege will be forfeited.

[3.] More than seven years' notorious, peaceable, and adverse use and occupation of gold mines, where the party has gone into possession of the land under deed, will give a statutory right, notwithstanding the vendor has reserved the exclusive privilege of working said mines.

In Equity, in Lumpkin Superior Court. Decision by Judge JOHN H. LUMPKIN, March Term, 1851.

Aaron Palmer, the defendant in error, filed his bill in Lumpkin

Superior Court, setting forth the following facts :   That in 1833, Lewis House being the drawer and grantee of a lot of land in Lumpkin County, conveyed the same to one John McClure, by a deed, in which was a reservation to himself of the gold on the premises, and the right of digging therefor, on condition that he (House) should test the lot for gold within eighteen months, and have the right of digging, if it should prove profitable ; but if he should fail to test it in that time, his right to cease and be void. In 1837, McClure sold the lot to Palmer, the complainant, subject to the reservation in the former deed.

Complainant charged, that no test had, within his knowledge, been made of the lot in the time limited ; that he bought with the understanding that no test had been made ; that he had afterwards heard a report, that it had been tested, but had not proved profitable, but did not know whether it was true or not; that for more than seven years he had, from time to time, been mining on the land without interruption ; that some time in 1849 or 1850, Matthew C. Halen entered on the land, under a lease from House, executed about that time, and commenced mining for gold, and continued so to do.   Whereupon, complainant prayed an injunction against House & Halen, to forever restrain them from mining on said lot.

To this bill, defendants filed a general demurrer, for want of equity, which was, on argument, overruled by the Court; to which decision defendants excepted.

MARTIN, for plaintiff in error.

BROWN & HANSELL, for defendants.

*By the Court.*—LUMPKIN, J. delivering the opinion.

This was a bill filed by Aaron Palmer to restrain Lewis House and Matthew C. Halen, his lessee, from digging gold on lot No. 501, in the 13th district and 1st section of what was originally Cherokee, now Lumpkin County.   Lewis House was the drawer of the land, and he conveyed the same to one John McClure, in 1833, reserving to himself the right of digging gold on the

premises, on condition that he should test the lot within eighteen months, and find it profitable ; failing to do this, his right was to cease and to be of no effect.

In 1837, McClure sold the land to Palmer, the complainant, subject to the same reservation.   The bill charges, that at the time this last conveyance was made, it was the understanding of the complainant, that House had waived all his right under his deed to McClure, " by having failed to test the lot within eighteen months, according to the condition in his deed."   It further charges that, " more than four years having elapsed from the date of House's sale to McClure, and House having made no pretension to work on the lot, or given notice to McClure of his purpose to do so," that he had good reason to believe that House had forever relinquished all his right in said lot, and that he bought with this belief.   It further charges, " that it was not true that a test had been made in compliance with the requisition in the deed to McClure, or that notice had been given to the complainant that he found the mine profitable, and intended to work it."

The complainant states, " that having purchased under these circumstances, afterwards, to-wit: in 1840, he commenced operating on the lot for gold, believing and claiming that the gold as well as the land, was rightfully his property ; and that from that year down to a recent period, and for more than seven years, he has at frequent intervals, and as constantly as he could spare his hands from other employment, worked for gold on said lot; during most or all of which time, he has had on said lot, his mining tools, utensils, troughs, &c. or some of them ; claiming and holding the same independent of the right of all other persons, while House has not at any time during this period, made any attempt to operate on said lot."

To this bill, defendants filed a general demurrer, for want of equity, which was on argument, overruled by the Court.   And it is to reverse this decision, that this writ of error is prosecuted.

It will be observed, that it is not denied that the case made by the bill, is a proper subject matter of injunction.   The controversy is one of title.

[1.] We take this to be the obvious meaning of the reservation in the deeds. House stipulated that in parting with the land, he was to retain the right to the minerals, *provided*, he tested them within eighteen months, and was satisfied that it would be profitable to work them.

[2.] This condition, then, was for his benefit, and imposed upon him a plain duty, failing to perform which, he forfeited the privilege which otherwise would have been permanently secured. The bill charges substantially that he neglected to test the mines within the year and a half limited, or to give notice that he had found them productive, and intended working them.

His failure to make the test, was of itself a forfeiture of the privilege. But we are further of the opinion that he should have given notice of the result. This was not a secret to be locked up in his own bosom and suffered to slumber there, or be published, as future and more thorough experiments, the employment of new and improved machinery, or other circumstances might suggest. It was a thing to be done and declared within a fixed space, or it was forever too late. Deeds are to be taken most strongly against him who is the agent or contractor, inasmuch as the instinct of self-preservation will always make men sufficiently careful to protect themselves—*verba fortius accipiuntur contro proferentem*. And it would be manifestly wrong to hold, that McClure and Palmer were to be kept forever in doubt and uncertainty, as to the determination of House. All who might subsequently buy the land, had the right to know whether they took it with or without the burden. House's notice that he had made the test, was therefore indispensable, according to the statements in the bill then, which are admitted by the demurrer to be true. Palmer took the title, discharged from the incumbrance.

[3.] But suppose it were otherwise—if he went into possession *bona fide* under his deed, and worked the mine publicly, notoriously and uninterruptedly for about ten years, claiming them as his own and against all other persons whatever, we think he has acquired an indefeasible statutory title, and that he is thus doubly fortified against the aggressions of the adverse party.