(73 Misc. Rep. 80.)

## FRENCH v. LANSING.

(Supreme Court, Special Term, Onondaga County.   July, 1911.)

1. MINES AND MINERALS (§ 55*)—CONVEYANCES—RESERVATIONS OF MINERALS
   —CONSTRUCTION.
   A deed of land "with the exception of mines and minerals which are
   not intended to be conveyed" passes title to the surface and the limestone
   on and near the surface, and reserves title to the minerals, including
   gypsum, beneath.
   [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 153–
   165; Dec. Dig. § 55.*]

2. MINES AND MINERALS (§ 49*)—ADVERSE POSSESSION—ELEMENTS—MINERALS.
   Where there is a severance between the ownership of the soil and of
   the minerals, the mere possession of the soil by its owner is not adverse
   to the owner of the minerals, and the rules prescribed by Code Civ. Proc.
   §§ 370–372. relating to adverse possession of the surface, do not apply
   to possession by the owner of the surface adverse to the rights of the
   owner of the minerals.
   [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 135
   Dec. Dig. § 49.*]

3. CHAMPERTY AND MAINTENANCE (§ 7*)—ADVERSE POSSESSION—ELEMENTS—
   MINERALS.
   Where a quarry is opened upon one part of lands of the surface own-
   er, whether with or without claim of title, this does not constitute ad-
   verse possession as against the owner of the minerals on another part of
   the lands, and deeds of mineral rights by the latter in such other parts
   while the quarry is in operation are not champertous.
   [Ed. Note.—For other cases, see Champerty and Maintenance, Cent.
   Dig. §§ 54–110; Dec. Dig. § 7.*]

4. MINES AND MINERALS (§ 122*)—TITLE TO PROPERTY—TRESPASS.
   Where one owns the surface and another the minerals in lands, the
   latter has the right to enter and interfere with the surface sufficiently
   to enable him to reach and appropriate the minerals, but the act of an-
   other than the owner in removing superficial strata of rock and piling
   them on the land, and mining the minerals, is a trespass upon the owner
   of the surface, for which he is entitled to damages.
   [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 243;
   Dec. Dig. § 122.*]

Action by Hamlin Q. French against Henry H. Lansing for an
injunction and damages. Judgment for plaintiff.

Olmsted & Van Bergen, for plaintiff.
Newell, Chapman & Newell, for defendant.

ANDREWS, J. One George D. Wickham was originally the owner
of lot 73 in the town of Manlius, in this county, containing 600 acres
of land.   In 1814 he conveyed 200 acres from the easterly part of
this lot by a warranty deed to one David Otis, "with the exception
of mines and minerals, which are not hereby intended to be con-
veyed."   By various mesne conveyances the title to 25 acres of this
200 had, at the time of the commencement of the action, become
vested in the plaintiff.   George D. Wickham died in 1845, leaving a
last will and testament by which he devised the rest and residue of
his real estate of every kind and description.   After the commence-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ment of this action his devisees conveyed to Ernest I. White all mines and minerals on the said lot 73, and subsequently Mr. White conveyed to the defendant such mines and minerals upon the 25 acres owned by the plaintiff. For a number of years the defendant has quarried gypsum at the southwest corner of such 25 acres. To obtain this material, he has removed the surface soil and the overlying strata of water limestone, and has dumped such refuse material on the plaintiff's land at a point somewhat north of his quarry.

The plaintiff claims (1) that the title to the gypsum in question passed by deed from Wickham to Otis, and thence, in part, at least, to himself; (2) that he has obtained title thereto by reason of adverse possession as against the Wickham devisees and against any person or persons claiming the same through reservations or exceptions in deeds forming part of the chain of title subsequent to the Otis deed; (3) that the deed from Wickham's devisees to White and from White to the defendant were champertous and void; (4) that in any event the acts of the defendant in the destruction of the soil and the removal of limestone prior to the deed to him from White were wrongful; (5) that, under the evidence in this case, the use by the defendant of any part of the 25 acres as a spoil bank is wrongful. The plaintiff, therefore, asks that the defendant be enjoined from trespassing upon the plaintiff's land and from digging, raising, and carrying away gypsum from the same; that he be further enjoined from dumping refuse from the quarry upon the same; and that he account and pay to the plaintiff for the gypsum already carried away by him, and pay damages for the injury to plaintiff's land caused by the removal of the limestone and the placing of his spoil bank thereon.

[1] In my opinion the decision of the Court of Appeals in White v. Miller, 200 N. Y. 29, 92 N. E. 1065, 140 Am. St. Rep. 618, where the effect and meaning of the Wickham deed is discussed, is conclusive upon the question of the interpretation of the clause excepting mines and minerals. That court there held that under this clause the limestone passed to the grantee Otis, but that the title to the gypsum remained in the grantor, Wickham. The result is not dependent upon the findings in that case as to whether upon lot 73 gypsum outcropped upon the surface of the land or whether on that particular lot it could be more readily mined or quarried; but depends upon the nature of the material, the general situation in which it is found, and the methods which were or might have been used to obtain it. I must, therefore, hold that by this deed to Otis there was wrought a severance between the ownership of the surface of the soil and the limestone thereon and the minerals, including gypsum, beneath; that the former passed to Otis and to his grantees; that the latter was retained by Wickham and passed from his devisees to White, and, so far as the 25 acres in question are concerned, to the defendant Lansing.

As to the title to the gypsum which the plaintiff claims he has obtained by adverse possession, it is not necessary to discuss in detail the acts of the persons under which this claim is made. They con-

sisted generally in the removal of gypsum from time to time from quarries on the 25 acres in question and upon other portions of the original 600 acres which belonged to Wickham. The question arises as to what effect such acts, assuming that they continued for 20 years, have upon the title of the owner of minerals beneath the surface.

[2] It is perfectly clear that where, as in this case, there is a severance between the ownership of the soil and of the minerals, the mere possession of the soil by its owner is not, and never can be, adverse to the owner of the minerals. But it would perhaps be going too far to hold that there can be no possible adverse possession of any kind as against the owner of the mineral rights. In fact, it has been assumed again and again by the courts that title to such rights may be acquired by adverse possession, although in none of the cases stating that rule, so far as I have been able to discover, with one exception, has it ever been held that the acts relied upon were sufficient to transfer the title. Marvin v. Brewster Iron M. Co., 55 N. Y. 538, 14 Am. Rep. 322; Huss v. Jacobs, 210 Pa. 145, 59 Atl. 991; Pierce v. Barney, 209 Pa. 132, 58 Atl. 152; Plummer v. Coal & Iron Co., 160 Pa. 483, 28 Atl. 853; D. & H. C. Co. v. Hughes, 183 Pa. 66, 38 Atl. 568, 38 L. R. A. 826, 63 Am. St. Rep. 743; Caldwell v. Copeland, 37 Pa. 427, 78 Am. Dec. 436; Gill v. Fletcher, 74 Ohio St. 295, 78 N. E. 433, 113 Am. St. Rep. 962; Arnold v. Stevens, 24 Pick. (Mass.) 106, 35 Am. Dec. 305; Wallace v. Elm Grove Coal Co., 58 W. Va. 449, 52 S. E. 485; Murray v. Allard, 100 Tenn. 100, 43 S. W. 355, 39 L. R. A. 249, 66 Am. St. Rep. 740; Catlin Coal Co. v. Lloyd, 180 Ill. 398, 54 N. E. 214, 72 Am. St. Rep. 216; Costello v. Muheim, 9 Ariz. 422, 84 Pac. 906; Plummer v. Coal & Iron Co., 104 Fed. 208, 43 C. C. A. 490; Hamilton v. Mining Co. (C. C.) 33 Fed. 562; Smith v. Lloyd, 9 Exch. 562; Ashton v. Stock, 6 Ch. D. 719; Earl of Dartmouth v. Spittle, 19 Wkly. Rep. 444; Lord Advocate v. Wemyss, 1900 Law Rep. (A. C.) 48, 61, 69. The exception referred to is House v. Palmer, 9 Ga. 497, and in that case the holding with regard to the effect of acts claimed to constitute adverse possession was not necessary to the decision.

Where the owner of the soil or another digs or quarries minerals which do not belong to him, he might obtain title to the ores or minerals mined or quarried after they were severed. If the owner of the minerals had a right of way over the surface of the ground, or any other easement thereon, this might be lost. And so it is possible that adverse possession might be shown if a certain mine or quarry were surrounded on all sides with galleries and a defined area was so opened out. But, under any ordinary circumstances, it is difficult to see how there can be adverse possession of so much of the mines or minerals as lie untouched in their beds.

Under our Code a person claiming title founded upon a written instrument is deemed in adverse possession of land (1) where it is usually cultivated or improved; (2) where it has been protected by a substantial inclosure; (3) where, although not inclosed, it has

been used for the supply of fuel or of, fencing timber; and where a known farm or a lot has been partly improved the portion of the farm or lot that has been left not cleared or not inclosed, according to the usual course and custom of the adjacent country, is also deemed to have been occupied adversely. Where the person does not claim title founded upon a written instrument, the land is deemed occupied adversely where it has been protected by a substantial inclosure or where it has been usually cultivated or improved. Code Civ. Proc. §§ 370–372.

These rules apply to adverse possession of the surface, and form no guide, even by analogy, to such a case as the present. They all contemplate some sort of notice to the true owner and possession and dominion of one kind or another over the whole of the premises claimed adversely. Where there is such known farm or lot with defined boundaries, the partial improvement may fairly be said to give warning of a claim to the whole, and to constitute possession of the whole.

[3] The same thing cannot be said to result from the opening of a quarry for gypsum or limestone or the driving of a gallery into a vein of coal. In either case, what claim is made or what possession is there of the minerals beyond the face of the quarry or the end of the vein? If a coal mine, is there possession and claim of the entire vein no matter how far the same may extend? In the case at bar, if there is adverse possession, it covers at least the 200 acres deeded to Otis; for it is to be observed that the act of Otis and his grantees in subsequently dividing the surface is not notice of any kind to Wickham and his heirs. One of the tests of adverse possession under a claim of title is whether or not it is such as enables the possessor to maintain trespass against a stranger. If A. opened a quarry on the south end of these 200 acres, could he maintain an action in trespass against B. who, subsequently, opened a quarry at the north end thereof? Or, suppose B. opened a coal mine. Without, however, deciding definitely just how, if at all, adverse possession of minerals separated from the surface can be obtained, it is probably enough to hold here that the mere opening of a quarry, with or without a written claim of title, did not constitute adverse possession as against Wickham and his heirs of the gypsum situated beyond the quarry.

This result disposes of the claim that the deeds to White and from White to the defendant were champertous. If there was no adverse possession by the plaintiff or his predecessor in title, there was no champerty.

[4] If these views are correct, it follows that prior to the deed from White to the defendant the title to this gypsum was in Wickham, or his heirs, or in White. They undoubtedly had the right to enter upon the land and to interfere with the surface, so far as was essential to enable them to reach and appropriate this material. The same acts, however, on the part of a stranger, would constitute a trespass, unless the owner consented thereto or was estopped from making objection. The defendant was such a stranger. The

plaintiff was the owner of the surface. If there was such consent or estoppel, it arises through the language of deeds forming the plaintiff's chain of title.

In 1814 Wickham's grantee, Otis, conveyed the premises in question to Phineas Kellogg and Phineas Kellogg, Jr. In the same year these grantees conveyed to Asel Wilcox the undivided third part of all the gypsum or plaster which is or may be found thereon, "with the right and privilege at any time hereafter to enter upon the said premises and dig, raise and convey away the said plaster." In 1817 Phineas Kellogg conveyed his interest in the property to Phineas Kellogg, Jr. In 1818 Phineas Kellogg, Jr., mortgaged the same to John French, reserving, however, one equal undivided half of all the plaster on said premises. In view of the prior deed to Wilcox, this would pass to the mortgagee one-sixth of such plaster. Later in the same year Phineas Kellogg, Jr., conveyed the premises to Pearl and Philo Kellogg, reserving the gypsum and the plaster, with the privilege to dig and carry away the same. And in 1823 he conveyed to Wilcox the undivided two-thirds of the plaster on the premises with the same right. The French mortgage was foreclosed and the title derived from this foreclosure ultimately came to the plaintiff, many of the deeds containing a clause excepting whatever rights Asel Wilcox might have to dig plaster on the land. The Wilcox title to the plaster came to the defendant.

It is therefore true that, but for the exception in the Wickham deed, the defendant would have been the owner of five-sixths of the gypsum, and the plaintiff's predecessor in title had conveyed to him the right to enter, dig, and carry away the same. But this right of interference with the surface was dependent upon the ownership of the gypsum.

Similar language was used in one of the deeds forming part of the plaintiff's chain of title in White v. Miller, already referred to. In that deed the Adamant Plaster Company, owning certain land, conveyed it to White's predecessor in title, excepting and reserving, however, to the grantor, all the gypsum in and upon the land conveyed, and the right of working, mining, and carrying away the same, and for that purpose entering upon the premises. Miller had obtained a conveyance of the rights and interests which the Adamant Plaster Company had reserved in this deed; yet the Court of Appeals, holding that the Wickham heirs and White were the owners of the underlying gypsum, affirmed a judgment which found that the disturbance of the surface of the plaintiff's land by the defendant was unlawful and gave damages for such acts. In my opinion this case is decisive of the questions raised here, and that the acts of the defendant in disturbing the surface of the soil and carrying away the plaintiff's limestone prior to the deed to him from White constituted a trespass for which the plaintiff is entitled to recover damages.

As to the act of the defendant in placing a spoil bank upon the plaintiff's land, I am also of the opinion that the plaintiff is entitled to recover. These acts were substantially all committed before the White deed was received, and were therefore a trespass. Whether

they would have been wrongful afterward depends upon their necessity and need not be decided.

It is conceded that 80 cords of limestone were removed from these premises by the defendant. Its value is fixed at $20. About one-half acre was covered by the spoil bank and rendered permanently unfit for agricultural purposes. The damage so caused is fixed at $50. The total amount allowed plaintiff is therefore $70, together with the costs of this action.

Findings in accordance with these views may be prepared, and, if not agreed upon, will be settled upon notice.

Judgment accordingly.