(78 Misc. Rep. 428.)

WHITE v. MILLER.

(Supreme Court, Trial Term, Onondaga County. December, 1912.)

1. MINES AND MINERALS (§ 55*)—RESERVATION IN CONVEYANCE—CONSTRUCTION.

Where a conveyance of land excepts and reserves to the grantor all mines and minerals, it works a severance between the ownership of the surface, including the limestone thereon, and the minerals, including the gypsum, beneath.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 153–165; Dec. Dig. § 55.*]

2. PARTIES (§ 80*)—OBJECTIONS—MODE OF RAISING OBJECTIONS.

Where plaintiff's failure to join parties is not taken advantage of by demurrer or answer, while the fact of their nonjoinder may be proved to prevent the plaintiff from recovering more than his proportional share or interest, it cannot be urged as a ground for defeating the action.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 123–131, 170; Dec. Dig. § 80.*]

3. MINES AND MINERALS (§ 52*)—GROUNDS FOR DENYING RELIEF—LACHES.

No period of inaction will bar the right to injunction against the removal from land of minerals belonging to plaintiff, unless continued for such time as will authorize the presumption of a grant.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 142–146; Dec. Dig. § 52.*]

4. MINES AND MINERALS (§ 49*)—ADVERSE POSSESSION—NATURE AND ELEMENTS—MINES AND MINERALS.

Where there has been a severance between the surface of the soil and the minerals underneath, the owner of the surface, by carrying on mining operations, has no adverse possession of the minerals remaining in the land.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 135; Dec. Dig. § 49.*]

5. MINES AND MINERALS (§ 49*)—PRESCRIPTION—NATURE OF RIGHT.

Where the title to the surface of lands is severed from that to the mines and minerals underlying the surface, the owner of the surface does not, by carrying on mining operations, acquire rights by prescription, as distinguished from adverse possession, to the minerals which have not been removed.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 135; Dec. Dig. § 49.*]

6. CHAMPERTY AND MAINTENANCE (§ 7*)—CONVEYANCE OF PROPERTY HELD ADVERSELY.

Where the title to the surface of land has been severed from that to the mines and minerals underlying it, a conveyance of the mines and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

minerals while the owner of the surface is carrying on mining operations is not champertous.

[Ed. Note.—For other cases, see Champerty and Maintenance, Cent. Dig. §§ 54–110; Dec. Dig. § 7.*]

7. MINES AND MINERALS (§§ 51, 52*)—TRESPASS—INJUNCTION.

Where the title to the surface was severed from that to the mines and minerals in a tract of 174 acres, and plaintiff became the owner of 5/7 of all mines and minerals on the whole tract, he is entitled to an injunction against the owner of 12 acres of the surface who has quarried gypsum on a portion thereof, and to damages for the removal of gypsum during the six years next preceding the commencement of the action.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 137–141, 142–146; Dec. Dig. §§ 51, 52.*]

Action by Ernest I. White against Clifford L. Miller for injunction and damages. Judgment for plaintiff.

See, also, 134 App. Div. 908, 118 N. Y. Supp. 1150.

White & Barber, of Syracuse (Jerome L. Cheney, of Syracuse, of counsel), for plaintiff.

King, Waters & Page, of Syracuse, for defendant.

ANDREWS, J. One George D. Wickham was originally the owner of lot 73 in the town of Manlius, in Onondaga county, containing 600 acres of land. On July 10, 1807, he conveyed 174 acres of such land by warranty deed to one Asel Wilcox, "excepting and reserving out of the premises hereby intended to be conveyed all mines and minerals." By various mesne conveyances the title to some 12 acres of this 174 had, at the time of the commencement of this action, become vested in the defendant.

George D. Wickham died in 1845, leaving a last will and testament by which he devised the rest and residue of his real estate of every kind and description. Thereafter by conveyances from his devisees and their successors in title the plaintiff became the owner of five-sevenths of all mines and minerals on said lot 73; the title to the remaining two-sevenths still remaining in certain of Wickham's devisees. For a number of years the defendant has quarried gypsum upon a portion of the 12 acres deeded to him. To obtain this material, he has removed the surface of the soil and the overlying stratum of water limestone. He is still engaged in such work, and threatens and intends to continue the same.

The plaintiff claims that he is the owner of an undivided five-sevenths of such gypsum; that as to him the removal thereof is unlawful, and he brings this action for the purpose of enjoining its continuance and of recovering damages for the gypsum already removed.

The defendant claims (1) that the gypsum passed under the original deed from Wickham to Wilcox and thence to him; (2) that because he has quarried such gypsum openly under a claim of right for a period exceeding 20 years he has obtained title thereto by adverse possession; (3) that, if he has not obtained title thereto by adverse possession, he has obtained the right to quarry and remove such gypsum under the theory of prescription; (4) that the deeds under which the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plaintiff claims are void as being champertous; (5) that the plaintiff cannot maintain this action because of laches; and (6) that the plaintiff cannot maintain this action because, being a tenant in common of the gypsum, his cotenants have not been brought in as parties.

[1] In my opinion the Court of Appeals in White v. Miller, 200 N. Y. 29, 92 N. E. 1065, 140 Am. St. Rep. 618, where the effect of a Wickham deed containing a similar exception or reservation is discussed, is conclusive upon the question of the interpretation of the Wilcox deed. I must hold that by this deed from Wickham to Wilcox there was wrought a severance between the ownership of the surface of the soil, including the limestone thereon, and the minerals, including the gypsum beneath; that the former passed to Wilcox and his grantees; that the latter was retained by Wickham; and that an undivided five-sevenths thereof passed from his devisees to White.

[2] The defendant has not taken advantage of the failure to join the Wickham devisees as parties either by demurrer or answer. That being so, while the fact of their nonjoinder may be proved at the trial for the purpose of preventing the plaintiff from recovering more than this proportional share or interest, it cannot be urged as a ground for defeating the action. Hill v. Gibbs, 5 Hill, 56 and note; 38 Cyc. 118.

[3] As to the defense of laches, there is a distinction between an action for an equitable remedy in aid of or to enforce a legal right not barred by the statute of limitations and the case where an exclusively equitable remedy is sought to enforce a purely equitable right. In cases of the latter class long delay or acquiescence, although short of the statutory period for the limitation of equitable actions, may be a ground for refusing relief. But, where an injunction is sought to prevent repeated trespasses, the relief is allowed as much upon the ground of public policy as upon any other. The public as well as the plaintiff is interested in preventing a multiplicity of suits. To refuse an injunction while the legal remedy was still in force would serve no good purpose. In this state no period of inaction merely has been held sufficient to justify a nuisance or trespass, unless it has continued for such a length of time as will authorize the presumption of a grant. So long as the legal right exists the owner is entitled to maintain his action in equity to restrain violations of this right. Calhoun v. Millard, 121 N. Y. 69, 24 N. E. 27, 8 L. R. A. 248; Galway v. Metropolitan El. R. R. Co., 128 N. Y. 132, 28 N. E. 479, 13 L. R. A. 788; Mendenez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143, 32 L. Ed. 526; Matter of Baker, L. R. (20 Ch. Div.) 230. In short, laches is no defense in an action of this nature. There must be a case of estoppel before an injunction can be refused. And here no evidence of facts sufficient to justify a finding of estoppel has been given.

[4] In the case of French v. Lansing, 73 Misc. Rep. 80, 132 N. Y. Supp. 523, the question as to when and how, where a severance between the surface of the soil and the minerals underneath has been effected, title to the latter can be obtained by adverse possession, was discussed by this court. Here, as there, the acts under which this claim was made consisted generally in the removal of gypsum from time to time from quarries on the 12 acres in question and from other portions

·of the original 600 acres which belonged to Wickham. And here, as there, the question arises as to what effect such acts, assuming that they have continued for over 20 years, have upon the title of the owner of ·the minerals beneath the surface.

In the Lansing Case it was held that the mere opening and working ·of a quarry with or without a written claim of title did not constitute .adverse possession as against Wickham and his heirs to the gypsum situated beyond the face of the quarry. I see no reason, under the ·circumstances in this case, of changing the views there expressed.

It is true that in the case at bar somewhat fuller evidence is given ·of the use made of the surface which is said to be entirely useless for agricultural purposes. Such evidence tends to show that the lands in ·question had been surveyed and the boundaries thereof marked in 1867, 1884, 1887, 1890, and 1905; that a stone wall had been long in ·existence between part of the plaintiff's property, who owns a farm .adjoining the land in question, and the defendant's property; that there is also a natural ledge of rock extending 40 feet along the north side of the defendant's property and separating it from plaintiff's; ·that the gypsum cannot be mined on the lands in question, and that no galleries can be driven around the minerals because of the nature of the soil; that two houses and a barn were built in 1864 by defendant's predecessors at the quarry, and that the men working the quarry lived in the houses; that a wire fence was put up between the plaintiff's premises and the premises in question by the defendant in 1908.

All these acts, however, were acts which the defendant as owner ·of the surface of the premises in question had a right to perform, and were not in any sense adverse or hostile to the rights of the plaintiff :as the owner of the minerals beneath the soil.

I have examined the cases cited by the defendant, and they do not seem to touch the point in dispute. The Wisconsin cases all hold the ·undoubted proposition that, where there has been no severance between the title to the surface and that to the minerals beneath, one entering upon the surface and conducting mining operations thereon is in adverse possession both of such surface and of the minerals. Stephenson v. Wilson, 50 Wis. 95, 6 N. W. 240; Wilson v. Henry, 40 Wis. 594; Stephenson v. Wilson, 37 Wis. 482; Wilson v. Henry, 35 Wis. 241; Sydnor v. Palmer, 29 Wis. 226. To the same effect is the Iowa case, Colvin v. McCune, 39 Iowa 502, and the North Carolina case, Moore v. Thompson, 69 N. C. 120, and also Jackson v. Oltz, 8 Wend. 440. In Desloge v. Pearce, 38 Mo. 588, it is assumed, as has been assumed in many cases, that the right to enter .and dig for ores may be acquired by adverse enjoyment; but it was held that the circumstances disclosed were insufficient for that purpose. The same thing is true of Armstrong v. Caldwell, 53 Pa. 284; Caldwell v. Copeland, 37 Pa. 427, 78 Am. Dec. 436; Lillibridge v. Lackawanna Coal Co., 143 Pa. 293, 22 Atl. 1035, 13 L. R. A. 627, 24 Am. St. Rep. 544; Finnegan v. Stineman, 5 Pa. Super. Ct. 124.

The California cases do not seem to be in point. As I understand ·the rules that there prevail, a person may mark out upon public lands .a mining claim of a certain size upon the surface of the ground, and

thereupon obtain the right of mining within the boundaries so defined, and of using the surface for such objects. Such action puts him in possession· of the mining claim. No acts are necessary to evidence such possession other than those usually exercised by the owners of such claims. And such acts sufficiently long continued give title to the claim to the person exercising them. English v. Johnson, 17 Cal. 107, 76 Am. Dec. 574; Hicks v. Bell, 3 Cal. 219; Hess v. Winder, 30 Cal. 349; Nessler v. Bigelow, 60 Cal. 98; McTarnahàn v. Pike, 91 Cal. 540, 27 Pac. 784. To the same effect is Harris v. Equator Mining & S. Co. (C. C.) 8 Fed. 863.

The English cases also have no bearing upon the question as to how and when title may be acquired to the minerals beneath the land by adverse possession as distinguished from the title to the surface. ·They are cases where it is left to the jury to determine whether a grant, release, or other document necessary to perfect a title shall be presumed. They illustrate simply a rule of evidence. The title to land is not in itself a fact, but a legal conclusion drawn from a number of facts. One such fact is the due transmission of title to the present owner. This is ordinarily proved by the production of the appropriate deeds of records. If they are lost, secondary evidence may be given of their existence and contents; but assume that because of lapse of time, or other reason, the evidence of persons who actually saw or knew of these deeds cannot be obtained._ Circumstances may be shown from which the execution and delivery of the missing deeds may be inferred with more or less certainty. The question as to their former existence is a fact, and, as in all cases, this may be proved by direct or circumstantial evidence. It is not material that the possession should have lasted 20 years. The result in each case depends upon the circumstances disclosed,· and they may be so strong that, independently of any question as to the length of possession, the inference of a deed may be justified. As is said by Lord Mansfield in Mayor of Kingston v. Horner, Cowp. 102:

"All evidence is according to the subject-matter to which it is applied. There is a great difference between length of time which operates as a bar to a claim, and that which is only used by way of evidence. A jury is concluded * * * in the one case. But * * * in the other evidence may be left to the consideration of the jury to be credited or not, and to draw their inference one way or the other, according to circumstances."

In Curtis v. Daniel, 10 East, 273, the question arose as to whether the title to certain minerals lying under former waste lands was in the· tenants or in the lord of the manor, and it was held that, though the general presumption of law was that the soil of the waste was in the lord of the manor, yet it might be shown by evidence of acts of ownership to be in the tenants. The same circumstances appear in Rowe v. Grenfel, 21 Eng. C. L. 396, and in Barnes v. Mawson, 1 Maule & Sel. 77. I shall therefore hold that the defendant has not obtained title by adverse possession to the gypsum underlying the 12 acres in question.

[5] Even though the defendant may not have acquired the title, it is still claimed that he has gained certain property or rights under the

theory of prescription. It is obvious that under no such theory could he obtain title to the minerals themselves. The ownership of these minerals would be a corporeal hereditament, and as such the doctrine of prescription does not apply to it. Caldwell v. Copeland, 37 Pa. 427, 78 Am. Dec. 436; 2 Wash. Real Prop. (6th Ed.) § 1318. But the right to work a mine or extract minerals from the land of another is a profit a prendre, and as such may be created by a grant or a prescription. Pierce v. Keator, 70 N. Y. 419, 26 Am. Rep. 612; Taylor v. Millard, 118 N. Y. 244, 23 N. E. 376, 6 L. R. A. 667; Wash. Real Prop., supra.

Undoubtedly the plaintiff, as the owner of all the minerals including gypsum beneath the soil, could have granted to the defendant the right to quarry and remove the gypsum in question in such a manner that the title thereto still remained in the grantor; and, if such a right may be granted, it may be obtained by prescription. Arnold v. Stevens, 24 Pick. (Mass.) 106, 35 Am. Dec. 305; Gloninger v. Franklin Coal Co., 55 Pa. 9, 93 Am. Dec. 720.

But the extent of the right acquired by prescription is measured by the extent of the use and enjoyment thereof during the prescriptive period; and, as in the case of adverse possession, it is difficult to see how there has been any use or enjoyment of the gypsum beyond the face of the quarry operated by the defendant and still lying undisturbed in its bed. The same argument used in French v. Lansing with regard to the doctrine of adverse possession applies to the doctrine of prescription.

[6] The result as to adverse possession disposes of the claim that the deeds to the plaintiff were champertous. If there was no possession adverse to the plaintiff or his predecessors in title, there was no champerty.

[7] Holding these views, I must find, not only that the plaintiff is the owner in fee of five-sevenths of the gypsum on the land in question, but also that the acts of the defendant in removing gypsum therefrom have been wrongful, and that the plaintiff is entitled to recover such damages as he has suffered by reason thereof during the six years prior to the commencement of this action. The evidence shows that during those years the defendant has quarried and removed 35,-528.65 tons.

I shall further hold that the damages caused thereby amount to 10 cents a ton, making a total of $3,552.86. Five-sevenths thereof would be $2,537.75.

Proper findings may be prepared in accordance with these views. If not agreed upon, they will be settled upon notice.

Judgment accordingly.