## Curtis-Jordan Oil & Gas Co. et al. v. Mullins et al.

(Decided Dec. 18, 1936.)

(As Modified on Rehearing June 25, 1937.)

FOX & GORDON and S. Y. TRIMBLE for appellants.
WHITE & CLARK for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

On and prior to September 3, 1889, C. H. Patterson was the owner in fee simple of a tract of 104 acres of land situated near Crofton in Christian county. On October 12, 1892, he conveyed the land to John Clark, but the deed contained the following reservation and exception:

"It is hereby provided that there is reserved and excepted from this conveyance the oil and gas rights which were conveyed by C. H. Patterson to the Sand Lick Oil and Gas Company as shown by the deed of record to which reference is made."

On April 18, 1895, Clark conveyed the land to John and A. J. Bennett with a similar reservation and exception in the deed. On November 1, 1902, the Bennetts conveyed the tract to C. H. Patterson, the former owner, and on August 15, 1911, he conveyed it to H. H. Tweedell and Tweedell on February 21, 1924, conveyed it to H. M. Petsch. In the three latter conveyances there was no reservation of oil and gas rights.

On September 3, 1899, C. H. Patterson conveyed to the Sand Lick Oil & Gas Company, a Kentucky corporation, all the oil, gas, and other minerals in and under the 104-acre tract with the usual rights to enter upon the land and explore for and remove oil, gas, or other minerals found. The Sand Lick Oil & Gas Company also acquired by conveyance like rights in and to a number of other tracts adjacent to and in the vicinity of the Patterson land. After the corporate life of the corporation as provided in its charter had expired, a suit was instituted in the Christian circuit court in which all the stockholders were parties seeking a sale of all the corporate property consisting of the mineral rights in and to the various tracts of land including the 104-acre tract above referred to and a settlement of the corporate affairs.

The relief sought was granted and judgment and decree entered directing the master commissioner of the court to make a sale of all of the property and at the

sale, so directed to be made, Dr. Gant Gaither became the purchaser of the mineral rights in and to a number of tracts of land including the 104-acre tract and on June 12, 1931, the master commissioner made to him a deed for the property so purchased. On August 31, 1931, Dr. Gaither executed and delivered to R. P. Croft a deed conveying to him the oil, gas, and mineral rights in the 104-acre tract. On November 25, 1931, R. P. Croft executed and delivered to the Curtis-Jordan Oil & Gas Company, a written lease granting and leasing the oil, gas, and mineral rights in and to the 104-acre tract. In the meantime, however, and on December 31, 1928, H. M. Petsch leased to Charles H. Young the oil, gas, and mineral rights in the 104-acre tract and on January 8, 1929, Young assigned and transferred his interest in the lease to James F. Montgomery and W. W. Wilson and on August 20, 1929, Montgomery, Young, and Wilson assigned and transferred to A. E. and A. B. Mullins certain interest in the lease.

Shortly after acquiring the lease from R. P. Croft, the Curtis-Jordan Oil & Gas Company began operations, sinking two wells and striking a strong flow of gas.

On February 22, 1932, A. E. and A. B. Mullins instituted this action in equity against the Curtis-Jordan Oil & Gas Company, Dr. Gaither, R. P. Croft, and H. M. Petsch, and in their petition alleged in effect that the consideration for the conveyance of the oil, gas, and mineral rights from Patterson to the Sand Lick Oil & Gas Company failed, and attacked the validity of the decree and conveyance whereby Dr. Gaither claimed to have acquired title to the mineral rights in the 104-acre tract; alleged that by collusion and fraud between Petsch and Croft the latter acquired the conveyance from Dr. Gaither for the benefit of the former, and that by reason of the fraud and collusion any right or benefit under the conveyance inured to the plaintiffs. They further made claim of title by adverse possession and averred that the Curtis-Jordan Oil & Gas Company had both actual and constructive notice of their claim when it entered upon the land and drilled the wells and its action in so doing constituted a willful trespass to their damage in the sum of $2,500 and that the claim of defendants under the above-mentioned conveyance, leases, etc., was casting a cloud upon their title. They prayed that the cloud upon the title to the oil, gas, and mineral.

rights be removed and the lease from Petsch to Young which had been assigned to them be adjudged valid and legal; that the conveyance from Dr. Gaither to Croft and the lease from Croft to the Curtis-Jordan Oil & Gas Company and the title to Dr. Gaither under the decretal sale in so far as they affected the rights of plaintiffs to the Petsch tract be all adjudged null and void; that the Curtis-Jordan Oil & Gas Company be enjoined from further trespass on the tract of land or drilling wells or removing oil or gas therefrom; and that they recover the sum of $2,500 for the trespass thereupon.

By joint and separate answers, set-off, and counterclaim, the Curtis-Jordan Oil & Gas Company, R. P. Croft, and H. M. Petsch denied all the material allegations of the petition as against them and set up and relied on the conveyance made by the master commissioner to Dr. Gaither, his deed to Croft and the lease from Croft to the Curtis-Jordan Oil & Gas Company to establish and show their right, title, and interest to the oil, gas, and mineral rights in the land in controversy and set up other affirmative defenses which it will be unnecessary to now enumerate.

The issues were completed by a reply traversing the affirmative allegations of the answer, set-off, and counterclaim.

On final hearing, it was adjudged (1) that the lease from R. P. Croft to the Curtis-Jordan Oil & Gas Company be set aside and held for nought; (2) that the lease from Petsch to Young and the later assignment to A. E. and A. B. Mullins was a valid and subsisting lease of all gas and mineral rights on and under the real estate described in the petition and under same A. E. and A. B. Mullins had the sole and exclusive right to drill for oil and gas on the premises; (3) that the deed attempted to be secured by Croft to Dr. Gaither constituted a fraud upon the rights of plaintiffs and that neither Croft nor the Curtis-Jordan Oil & Gas Company who claimed through and under him secured any rights thereby; (4) that the Curtis-Jordan Oil & Gas Company in going upon the land and drilling wells thereon were willful trespassers against the right of plaintiffs and therefore were not entitled to credit as against plaintiffs for gas produced, marketed, and sold to the Kentucky Natural Gas Company; (5) that the proceeds of the sale of gas marketed from the land in

controversy which had been impounded pending the litigation belonged to A. E. and A. B. Mullins subject to the rights of H. M. Petsch; (6) that H. M. Petsch, pursuant to the terms of his lease, was entitled to receive $100 per year so long as gas was being marketed from the premises; (7) that plaintiffs recover their costs and the sums adjudged to Petsch be subject to payment of the costs adjudged against him. The action as against Dr. Gaither had been dismissed previous to the rendition of the judgment and the other defendants are appealing.

As grounds for reversal, it is argued in substance that the deed from C. H. Patterson to the Sand Lick Oil & Gas Company constituted and was a severance of the minerals and surface and that the minerals estate acquired by that conveyance was not abandoned or lost by nonuser; that appellees failed to establish title by adverse possession; that no fraud was established as against the Curtis-Jordan Oil & Gas Company; and that it could not be held liable for any of the alleged fraud on the part of Petsch and Croft.

Appellees' contention that the Sand Lick Oil & Gas Company and those claiming under it acquired no title under the deed from C. H. Patterson because of failure of consideration is wholly without merit and there is nothing in the record to sustain it. It therefore follows that by such conveyance there was a severance of the title to oil, gas, and other minerals from the title to the surface.

The evidence shows that there was no development or attempt to remove oil, gas, or other minerals by the Sand Lick Oil & Gas Company, its stockholders, or any persons claiming title under it until the wells were sunk by the Curtis-Jordan Company. There is likewise no showing that the owners of the surface ever attempted to explore for or remove any gas, oil, or minerals or that any notice was ever given to the Sand Lick Oil & Gas Company or those claiming under it that the owners of the surface were making any claim to the oil, gas, or mineral rights. The evidence merely shows continuity of title to the surface and the failure of the Sand Lick Oil & Gas Company to develop and remove the minerals. Where, as in this instance, there has been a severance of the mineral estate from the surface estate, the owner of the former does not forfeit or lose

his right or possession by any length of nonuser and the owner of the surface cannot acquire title to the minerals thereunder by an exclusive and continued ownership or occupancy of the surface merely. Stoffler v. Edgewater Coal Co., 198 Ky. 523, 249 S. W. 753; Scott v. Laws, 185 Ky. 440, 215 S. W. 81, 13 A. L. R. 369; Piney Oil & Gas Co. v. Scott, 258 Ky. 51, 79 S. W. (2d) 394.

At common law as well as under section 2366a-1, Kentucky Statutes, title and ownership of the surface of land does not give or carry title or possession to the mineral estate thereunder which has been sold and severed from the surface, but the presumption prevails that the owner and holder of the surface is trustee of the minerals for the use and benefit of the owner thereof; and limitation does not run in favor of the owner or holder of the surface against the owner of the mineral estate merely because of ownership or possession of the surface for any length of time. McPherson v. Thompson, 203 Ky. 35, 261 S. W. 853; Thornbury v. Virginia Iron, Coal & Coke Co., 216 Ky. 434, 287 S. W. 698; Shively v. Elkhorn Coal Corporation, 217 Ky. 192, 289 S. W. 262; Gray-Mellon Oil Co. v. Fairchild, 219 Ky. 143, 292 S. W. 743; Prewitt v. Bull, 234 Ky. 18, 27 S. W. (2d) 399; Franklin Fluorspar Co. v. Hosick, 239 Ky. 454, 39 S. W. (2d) 665; Piney Oil & Gas Company v. Scott, supra; Ratliff v. Sinberg, 258 Ky. 203, 79 S. W. (2d) 717.

In Piney Oil & Gas Company v. Scott, supra, it was held in effect that after a deed to minerals underlying certain lands had been recorded, the grantor who retained the surface and persons claiming under him became trustees for the grantee of the minerals and they could not by possession of the surface disseise the grantee of the minerals unless they openly disavowed or repudiated the trust and gave the owner of the mineral estate notice thereof; and it was further held in that case that adverse possession of minerals means adverse occupancy and user which must be wrought on the property in question. The owner of the surface may acquire title by adverse possession of minerals separated from the surface, but to do so he must not only open and work the mine, but actual possession and work must be uninterrupted, continuous, open, and notorious for the statutory period. McPherson v. Thompson, supra.

Concerning the attack on the validity of the deed from the commissioner to Dr. Gaither and the judgment and proceedings under which it was made, it is sufficient to say that if, in fact, that question may be raised in a proceeding of this character, the contention has been decided adversely to appellees in the case of Shadoin v. Sellars et al., 223 Ky. 751, 4 S. W. (2d) 717, wherein it was held in substance that the corporate existence of a corporation extends beyond its life as provided by its charter for the sole purpose of winding up its affairs and where its life has terminated under a charter, the stockholders in the absence of existing directors had control and could institute a suit to wind up its affairs. The sale of the oil leases in an action between stockholders of the corporation after the life of the corporation had terminated under its charter was upheld.

Coming to the question of fraud, it is the contention of appellees in effect that the conveyance of the mineral rights from Dr. Gaither to Croft was procured by Petsch and Croft as a subterfuge; that the title was really so taken in order that it might be leased to another and thus defeat the lease of appellees. There is in brief for appellees a recitation of the evidence and the facts and circumstances on which they rely to establish the alleged fraud, and we find from a review of the evidence they have set forth the substance of the evidence favorable to or supporting their cause. It is in substance that after Dr. Gaither purchased the mineral rights under various tracts, he gave to the owners of the surface the preference in the purchase of the mineral estate and so notified Mr. Petsch. It is shown that Petsch became dissatisfied with the terms of his lease to Young respecting mineral rights and approached appellees with the proposition to increase the royalties in the lease held by them which they refused to do. Appellees testified that they suggested to Petsch that if he did not want to buy the mineral rights from Dr. Gaither, they would buy them, but he told them that they need not worry that he was going to take care of it himself and would protect their lease in every way he could; that they relied upon his statement and made no attempt to purchase the mineral rights which Dr. Gaither acquired at the decretal sale; that they went to Dr. Gaither and told him that if Petsch did not want to buy the mineral rights back to protect their lease,

they wanted the refusal of them and Dr. Gaither informed them that Petsch had talked to him about it and asked him for a few days to take care of it himself. Dr. Gaither testified that prior to his conveyance to R. P. Croft, Petsch came to his office and stated he would like to clear up the title to the mineral rights by purchasing same, but wanted the doctor to hold the title in his name which he refused to do; that Petsch later came to his office to buy the mineral rights but he could not recall whether Petsch stated he was to buy for himself or whether he had found another party to buy. He told Petsch to go to his attorney, Mr. Edmonds, who would see after the matter.

Mr. Edmonds testified that Petsch came to his office saying that he had talked with Dr. Gaither about the mineral rights and had been referred to him; that having been informed that appellees had a lease on the Petsch land and knowing that Dr. Gaither would not desire to interfere with that lease, he told Petsch that Dr. Gaither would make no sale or conveyance of the mineral rights that would interfere with the rights of appellees; that Petsch said that it was satisfactory to him because he was under obligations to appellees and desired to protect them by purchasing the rights so their lease would become effective; that after the deed was made to Mr. Croft, his brother-in-law, he would pay the money; that he told Petsch Dr. Gaither did not care who bought the property and under whose name it was taken so he was paid the purchase price and the Mullins' lease would not be affected and Petsch reiterated the statement that that was the idea of the whole transaction and directed that the deed be drawn and said that his brother-in-law would be in in a few days and the transaction closed; that he prepared the papers and when Croft and Petsch came in he made the statement that it made no difference who bought the property just so appellees' lease was protected; that either Petsch or Croft said to him that the transaction was understood thoroughly; that Croft paid the consideration in currency and took the deed. Charles H. Young testified that just before the deed was made from Gaither to Croft he had a conversation with Croft in which the latter warned him that Petsch was going to try to take the lease away from him, but he told Croft he had transferred the lease to appellees; that Croft stated that Mullins was trying to get the Sand Lick lease transferred to some other person and wanted

to transfer it to him, but that Young had treated him right and he would keep him advised; that he thereupon wrote to Petsch that he understood he was figuring doing something else with the lease.

To show that the Curtis-Jordan Company and its agents and officials participated in the alleged collusion and fraud, counsel for appellees rely on the following evidence in their brief: Young testified that immediately after he had written the letter to Mr. Petsch he was in the office of the Curtis-Jordan Company and Mr. Jordan produced the letter and said: ''I just want to tell you that any lawsuit you bring or anything against Mr. Petsch just bring it against me because I have assumed all Petsch's obligations.'' That this conversation occurred before the Curtis-Jordan Company started drilling on the Petsch lease. Dr. Gaither testified that two or three months after he conveyed his interest to Croft, Mr. Jordan came to his office and asked about the Sand Lick proposition and that he replied that if Mr. Jordan had any lease on it or the landowners would arrange it he would be glad to make deeds to them for a small consideration to take care of the expenses and would straighten out titles; that Jordan replied that he wanted to know particularly about the Petsch lease; that he said, ''I understand that that was deeded to Mr. Petsch's brother-in-law and if it is leased to anyone besides Mr. Mullins, I think that you would be in the middle of a law suit about it rather promptly as it would certainly be an evasion; or I might have used the word fraud.'' That Mr. Jordan replied that he did not mind a lawsuit and was going to drill on the property; that he told Jordan if he did so he would have to take the witness stand against him.

Counsel also point to terms and conditions in the lease from Croft to Curtis-Jordan Company as confirming their contention. This lease was made on a written form and provided a royalty of $100 for each gas well. The $100 was stricken out and one-eighth of the gas inserted and at the foot of the lease it was provided, ''Lessor to have 1/16th overriding royalty.'' It was further provided in the lease, ''All litigation as to title assumed by parties of the first part including previous leases on the described land.''

Petsch and Croft denied that there was any collusion or that there was any understanding between

them that Croft was to take the title from Dr. Gaither and hold it for Petsch. They testified that Petsch had no interest whatever in the lease. They also emphatically denied the statements of Dr. Gaither, Mr. Edmonds, and others, relied on by appellees, to establish the alleged fraud and collusion. Mr. Jordan testified that he knew nothing about the Young lease until he had his attorney examine the title to the property. He admitted that he had a talk with Dr. Gaither when he went to see him about another matter and the subject of the Petsch property came up; that Dr. Gaither said there would likely be litigation over the lease and that he would have to be a witness against appellant, but that Dr. Gaither did not go into any details concerning the matter. He also admitted that he had a conversation with Mr. Young and referred to the letter from Young to Mullins, but that he did not have the letter or show it to Young. Both Mullins and Croft testified that it was the agreement and understanding at the time the lease was executed between them that the lessee would assume all expenses of any litigation that might arise concerning the lease, but that by mistake it was inserted in the lease that the party of the first part (lessor) would assume such liability.

It will be seen from the foregoing that as far as Petsch and Croft are concerned there is considerable evidence to sustain the allegations of collusion and fraud as to them and there are proven circumstances which lend color to this evidence. Croft was a brother-in-law of Petsch and was a farmer who had executed a lease upon his own land. He was not engaged in the oil business and this was the only deed or lease he had ever taken on mineral rights, but, as pointed out, Petsch and Croft make a vigorous denial of the evidence introduced to show fraud or bad faith on their parts and there are some circumstances giving color to their version of the matter. Although Dr. Gaither claims that he frowned on any suggestion that he receive pay for the mineral rights in the Petsch land and hold the title for Petsch and that he insisted that appellees should be protected, he did within a very short time make a conveyance to another person, thus putting it in the power of his grantee to frustrate his purpose to protect appellees. Not only so, but the evidence discloses that Dr. Gaither is a man of business affairs and he left this transaction to his attorney who claimed

to be acquainted with the doctor's desires, but who drew a deed which the doctor signed and acknowledged without inserting any conditions or provisions for the protection of appellees.

Notwithstanding the sharp conflict, it may be said that the allegations of fraud and collusion as to Petsch and Croft are sufficiently supported by the evidence to sustain the chancellor's finding in that particular, but from our recital of the evidence relied on by appellees, it will be seen that there is little if anything of substance to show or to serve as a foundation for an inference that the officers of the Curtis-Jordan Gas & Oil Company had any notice or knowledge of any fraud that might have been perpetrated by Petsch and Croft in securing the conveyance from Dr. Gaither. They had knowledge before they began the drilling of the wells that appellees were asserting claim under their lease, but before they began operations they had their attorney examine the title and after doing so he gave them an opinion that their lease was valid and advised them to put down the wells. It was nearly three months after Dr. Gaither made the deed to Croft before Croft executed the lease to Curtis-Jordan Oil & Gas Company and there is a total absence of evidence that the lessee or its officers or agents knew of any question being made about the lease of the Petsch property before the lease was executed and there is little, if anything, to show that they ever knew anything about the fraud it is claimed was perpetrated in securing the conveyance from Dr. Gaither; they merely were advised that appellees were making claim under their lease and that some litigation might arise concerning the matter.

It is a doctrine of universal application that in the absence of confidential relationship the burden of establishing fraud is upon the person charging it. McDaniel v. Tarry, 229 Ky. 396, 17 S. W. (2d) 252; Goerter v. Shapiro, 254 Ky. 701, 72 S. W. (2d) 444; Shacklette v. Goodall, 151 Ky. 20, 151 S. W. 23; Turner v. Hammock, 229 Ky. 836, 18 S. W. (2d) 285.

In the case of Indiana National Life Ins. Co. v. Maines, 191 Ky. 309, 230 S. W. 54, 55, it is said:

"Fraud is not to be presumed, but must be affirmatively proved. With the exception of dealings between persons occupying relations of a fiducial or confidential nature and the like, a presumption

of innocence, fair dealing, and good faith attends all lawful transactions among men, and upon the one who charges fraud, be he plaintiff or defendant, is cast the burden of sustaining his accusation. * * *

"The party relying upon fraud must produce such legal evidence as will overcome the legal presumption of innocence and beget a belief of the truth in the charge of fraud."

Whether Petsch and Croft, or either of them, were guilty of any or all the alleged reprehensible conduct imputed to them, and whether, if they were, it constituted actionable fraud, we need not determine, since the conclusion is inescapable that appellees utterly failed to meet the burden of establishing the alleged or any fraud, as against the Curtis-Jordan Oil Company, that would vitiate its lease which otherwise is unquestionably valid. Petsch had no right, title, or interest in or to the gas or oils in his land, and therefore his attempted lease thereof was a nullity.

Wherefore the judgment is reversed, with directions to enter judgment in conformity with this opinion.

Whole court sitting.