John T. DIEDERICH, Appellant,

v.

E. C. WARE, Appellee.

Court of Appeals of Kentucky.

March 23, 1956.

Chesley A. Lycan, Ashland, for appellant.

W. R. McCoy, Jr., Inez, Joe Vol Butt, Evansville, Ind., for appellee.

MILLIKEN, Chief Justice.

This case presents the question whether oil rights granted by an 1859 deed can be acquired through adverse possession by the owner of the surface of the land by the drilling and operation of two oil wells in a corner of a 56-acre tract.

The appellant, John T. Diederich, seeks a declaration of the rights of himself and others to royalties from two producing wells on a 56-acre tract, the surface rights to which are owned by the appellee, E. C. Ware, and the trial court adjudged that the appellee had acquired title to the oil by adverse possession through two wells which were sunk on the property by the surface owners in 1924 and which have been in open, notorious, and continuous operation ever since. The appellant bases his claim upon an 1859 recorded deed which severed the oil rights from the surface.

By recorded deed, dated April 2, 1859, an extremely early date for an oil deed, G. W. Webb and others conveyed to William P. Mellon and Algernon S. Gray the oil under their adjoining tracts of land in Johnson County, Kentucky. The deed reads as follows:

"Witnesseth: That in consideration of the sum of One ($1.00) Dollar in hand paid, the receipt of which is hereby acknowledged the parties of the first part have granted and sold to the said parties of the second part exclusive privilege of making, mining and getting oil on or from the lands which they severally own and such rights of way as may be necessary for the purposes, to-wit: the said Joseph and Elizabeth Williams and their part (tract) of land which lies on Paint Creek in said County of Johnson and lies west of Stephen Pelphreys land the tract containing about 480 acres. The said Lewis Williams and Margaret Williams and their tract lying west of sed Joseph Williams containing 85 acres. Sed Moses Williams and Josephine Williams and their tract lying west of sed Lewis Williams land. Sed George W. Webb and his wife, Elizabeth Webb and their tract lying west of sed Moses Williams, containing ——— acres. The sed Joseph Fairchilds and Catharine Fairchilds and their tract lying west of sed George W. Webb and containing ——— acres. The sed John Williams and Martha Williams and their tract lying west of Joseph Fairchilds and containing ——— acres. All the sed tracts joining each other and the said parties of the first part convey to the said parties of the second part the sed exclusive privilege and the sed rights of with special warranty."

The deed in question was before this Court in the case of Gray-Mellon Oil Co. v. Fairchild, 219 Ky. 143, 292 S.W. 743. In that case it was argued that the instrument merely gave Gray and Mellon the personal privilege to mine and get oil from the land; which privilege had been lost by nonuser. This Court held adversely to this contention, concluding that the deed conveyed a fee in the oil.

Around 1920, after many years of comparative inactivity, the heirs of Algernon S. Gray and the heirs and assigns of William P. Mellon conveyed their interest in the 1859 oil deed to a North Carolina corporation known as the Gray-Mellon Oil Company. The charter of this corporation was forfeited both in North Carolina and Kentucky by reason of inactivity and failure to pay taxes, and the title to the property reverted to the stockholders. John T. Diederich, the appellant, acquired his title from Ruffner Campbell, who was one of the Gray heirs and who owned 3/28 of the stock of the Gray-Mellon Oil Company and who would have been an heir inheriting 3/28 interest had there been no corporation. Diederich acquired for value both the deed for 3/28 undivided interest and 3/28 portion of the capital stock of the Gray-Mellon Oil Company. The other stockholders are numerous, mostly unknown and literally

scattered throughout the earth. This suit is prosecuted in behalf of Diederich and all other persons known and unknown who have any interest in the property.

Appellee, E. C. Ware, traces title to the particular tract in question back to C. F. Webb, and shows that by tradition C. F. Webb was the son and heir of G. W. Webb and that in some manner C. F. Webb acquired title from G. W. Webb. Though the record does not bridge the gap from G. W. Webb to C. F. Webb, the record does show that C. F. Webb was a son of the G. W. Webb mentioned in the oil mineral deed and the legend is that G. W. Webb conveyed to C. F. Webb. None of the conveyances or leases from C. F. Webb down to appellee, Ware, makes any mention or reference to the old oil deed. It is admitted in the pleadings that appellee and his predecessors are claiming under G. W. Webb, the original grantor, rather than as strangers, and the record shows that at the time C. F. Webb purported to convey a fee simple in part of the land formerly owned by his father there was on file in the Johnson County courthouse the recorded 1859 oil deed.

In 1923, B. H. Blanton, then owner of the particular tract involved in this suit and one of appellee Ware's predecessors in title, entered into a lease with Mid South Oil Company, giving that company a right to drill on this 56-acre tract. In 1924, Mid South drilled two wells which have been operated openly, notoriously and continuously on the property from 1924 until this suit was filed. Prior to the drilling of these wells other exploratory wells had been sunk on the property covered by the old mineral deed and appellant's predecessors knew of this exploration. The appellee claims as a remote vendee or assignee under the 1924 lease executed by his predecessor in title, Blanton, with Mid South, but since that lease gave merely exploration and producing rights, he claims more particularly as owner of the tract in question through the deed by which it was conveyed to him.

The question of the sufficiency of the description of the old mineral deed to accomplish a severance of the oil rights from the estate in the surface, a question not passed on in the Fairchild case, above, was raised but not passed on in the trial court. That court assumed the mineral deed sufficient to pass title because it felt this to be an ideal case in so far as it presents the question of adverse possession of oil and that a decision of this Court, the Court of Appeals, upon this matter would prove of value to the bench and bar of the state. The trial court remarked in an opinion that "there now exists a state of confusion as to other adjoining tracts upon which there has been long and continued production which tracts are claimed to be embraced within the rather large acreage supposed to have been described in the original mineral deed."

The old oil deed of 1859 appears valid, and as a result this question is presented: May the holder of a mineral deed granting to him the exclusive privilege of taking oil from a tract of land be divested of his rights under the deed through adverse possession if, subsequent to the severance of the mineral from the surface right, the surface owner or his successor in title permits others to sink oil wells on the property and to operate them under a lease for 32 years, paying royalties to the surface owner and his successors in title?

After severance of the mineral rights from the surface rights it is possible for the surface owner, or even a person having no interest in the surface, to acquire title to the minerals by adverse possession. Note, 35 A.L.R.2d 127. After such severance, title to the minerals cannot be gained through adverse possession without a penetration of the mineral estate. Instead, the presumption prevails that the owner and holder of the surface is trustee of the minerals for the use and benefit of the owner of the mineral rights. Piney Oil & Gas Co. v. Scott, 258 Ky. 51, 79 S.W.2d 394; Curtis-Jordan Oil Co. v. Mullins, 269 Ky. 514, 106 S.W.2d 979; Mc-

Pherson v. Thompson, 203 Ky. 35, 261 S.W. 853; KRS 381.430.

 Even though the surface owner, as so-called trustee, holds possession for the benefit of the owner of the minerals, he may, however, repudiate the trust and claim adversely to the mineral holder. He may repudiate the trust by acts or words which clearly and unmistakably bring home to the mineral holder the knowledge that the surface owner is claiming the minerals adversely. Piney Oil & Gas Co. v. Scott, above; Curtis-Jordan Oil & Gas Co., above. Here, the trial court found that the mineral owner's (appellant's) predecessors in title had actual and timely notice that oil was being taken from this tract under an adverse claim and made no effort within the 15-year statutory period to assert their rights. We accept this finding, for the truth of it appears to be conceded. CR 52.01.

 The required factors to establish adverse possession of minerals are identical with those required for adverse possession of land. In other words, there must be exclusive, actual, peaceable, open and notorious, continuous and hostile possession of the minerals under a claim of right for the statutory period. Vorhes v. Dennison, 300 Ky. 427, 189 S.W.2d 269; Hoskins v. Northern Lee Oil & Gas Co., 194 Ky. 628, 240 S.W. 377, 35 A.L.R. 127. The trial court found that these requirements had been met and quieted title to the oil under the entire 56-acre tract in the appellee, E. C. Ware, without discussing the question of whether by operating two wells in a corner of this tract the appellee had acquired title by adverse possession to the oil under the entire 56 acres.

There are two general categories of cases where land is acquired by adverse possession—those where entry was made under color of title afforded by a written instrument, and those cases where the adverse possessor has staked off his claim by fencing and the like but has no paper title. In the first class color of title supplies the boundaries of the area claimed, while in the latter class the fences or physical markings

define the area. When these categories and the law inherent in them are applied to severed mineral estates, they lead, as might be expected, to a lack of uniform results.

 Where there has been a severance of title to minerals from the title to the surface of land, the authorities are not in harmony on the question of whether the working of a part of the mineral estate is sufficient to give title by adverse possession to the mineral underlying the whole of it. In a number of cases it has been held, or indicated, that such a working is not sufficient. Piney Oil & Gas Co. v. Scott, 258 Ky. 51, 79 S.W.2d 394; Sanford v. Alabama Power Co., 256 Ala. 280, 54 So.2d 562; Davis v. Federal Land Bank of Columbia, 219 N.C. 248, 13 S.E.2d 417; French v. Lansing, 73 Misc. 80, 132 N.Y.S. 523; White v. Miller, 78 Misc. 428, 139 N.Y.S. 660; M'Donnell v. M'Kinty, (1847), 10 Ir. L. 514. The holdings of these cases appear to be based on the conclusion that once one gets below the surface there are no clear boundaries for defining the limits of the mineral estate—that color of title boundaries under ground are difficult to locate and that the fencing off of the subterranean area claimed can best be determined by confining it to the specific area actually mined. This reasoning ignores the fact that mineral estates are generally described by metes and bounds marked off on the surface. It is also said that an intruder on a mineral estate can have no "immediacy of use and occupation" of the whole of the minerals over which the law can by construction extend his actual possession. Piney Oil & Gas Co. v. Scott, 258 Ky. 51, 79 S.W.2d 394. This "immediacy of use" concept, applicable though it may be to solid minerals, is not particularly persuasive where a fugacious mineral is involved. Two geologists testified in the case at bar that the operation of two oil wells on this 56 acres since 1924 altered the entire subterranean structure underlying not only this particular tract but the entire 800 acres described in the old mineral deed as well, and caused movement of gases and other natural forces which ordinarily move oil to the mouth of a well. Thus, in a sense, the operators of the two

oil wells exercised dominion over all of the oil under their tract when they withdrew it by means of their two wells. In the case of a solid mineral such as coal this is not necessarily true, for title to coal can be defeated only by acts which actually take the mineral. Piney Oil & Gas Co. v. Scott, above.

◼ Several American cases are authority for the view that the rules of constructive possession applicable to surface estates are applicable to mineral estates, and that one working part of a well-defined, severed mineral estate may be deemed to be in constructive possession of the whole estate. Kinder v. LaSalle County Carbon Coal Co., 310 Ill. 126, 141 N.E. 537; Vance v. Guy, 223 N.C. 409, 27 S.E.2d 117, later appeal reported in 224 N.C. 607, 31 S.E.2d 766; Pollard v. Simpson, 240 Ala. 401, 199 So. 560; Medusa Portland Cement Co. v. Lamantina, 353 Pa. 53, 44 A.2d 244. It is our opinion that this latter line of cases is more consistent with good reason, especially in view of the tendency of the courts to treat mineral estates and surface estates alike for most other purposes. See Terteling Bros., Inc., v. Bennett, Ky., 287 S.W.2d 607.

◼ Having concluded that the ordinary rules of constructive possession are applicable to mineral estates, in order to determine the extent of appellee's adverse possession under these rules, we must next determine whether appellee and his predecessors worked these two oil wells under "color of title." What is color of title is a question of law for the Court to decide. Black v. Tennessee Coal, Iron & R. Co., 93 Ala. 109, 9 So. 537, 538.

The question here is essentially this: Can a surface owner who works the minerals under his land relying on his general warranty deed, which does not except the prior severed minerals, be said to have color of title to those minerals? The Piney Oil case, Piney Oil & Gas Co. v. Scott, 258 Ky. 51, 79 S.W.2d 394, at page 400, suggests that in such a case the surface owner does not have color of title. Two American cases are authority for the view that such an intruding surface owner may have color of title to the prior severed minerals under his tract. Sanford v. Alabama Power Co., 256 Ala. 280, 54 So.2d 562; Vance v. Guy, 223 N.C. 409, 27 S.E.2d 117, later appeal reported in 224 N.C. 607, 31 S.E.2d 766.

◼ Considering the vagueness of the description employed in the 1859 mineral deed involved in this action and the difficulty of ascertaining just what land is embraced by that deed, and additionally considering the gap in the title between G. W. Webb, grantor of the minerals, and his son, C. W. Webb, to whom appellee traces his general warranty deed, and the many conveyances over a span of many years which ignored the mineral deed, we are of the opinion that appellee and his predecessors, in this instance, were working these two oil wells under color of title.

◼ The fact appellee (surface owner) and his predecessors in title were, by express statute in Kentucky, KRS 381.430, trustees for the use and benefit of the mineral owner of the oil under this 56 acres requires some discussion of the question of whether the surface owners repudiated this trust in a manner sufficient to start the statute of limitations running. In the Piney Oil case, Piney Oil & Gas Co. v. Scott, 258 Ky. 51, 79 S.W.2d 394, there is some language suggesting the surface owner must give the mineral owner formal notice he is taking the minerals under an adverse claim in order to repudiate the trust and initiate limitations. In the present case, the appellant's predecessor in title, the Gray-Mellon Oil Company, had actual notice as early as 1925 that oil was being taken from the G. W. Webb tract mentioned in their mineral deed. The notice was formal in that it appears in testimony in the record of the case of Gray-Mellon Oil Co. v. Fairchild, 219 Ky. 143, 292 S.W. 743, in which we considered the same 1859 oil deed. We think that this notice, together with the open and notorious operation of these two wells since that time, was sufficient to cause limitation to run against the mineral owners claiming any interest in the oil under this

tract by virtue of the 1859 mineral deed where such interest is derived from the Gray-Mellon Oil Company.

It is our conclusion that the operation of the two oil wells for the statutory period cut off the right of anyone else to drill for or extract oil on this 56-acre tract.

The judgment is affirmed.

SIMS, Judge (dissenting) *[dissenting opinion omitted]*. E

The majority opinion is so far from my conception of the law of adverse possession in minerals, and the question is of such importance in my judgment as to call for a short dissenting opinion.

I agree with the majority that the required factors to establish adverse possession of minerals are identical with those required to establish adverse possession of the surface of land. It is for this reason I sharply disagree with the majority. To my mind there can be no possession of fugacious minerals until they are brought to the surface.

After citing many authorities in referring to "color of title boundaries under ground", the majority say these authorities ignore the fact that mineral estates are generally described by metes and bounds marked off on the surface. This may be true as to hard and stationary minerals, but certainly it has no applicability to fugacious minerals. It is impossible to give the boundaries of fugacious minerals under ground. We have written that an owner of an oil or gas well is the owner of all oil or gas the well produces regardless of what boundary of land it drains. United Carbon Co. v. Campbellville Gas Co., 230 Ky. 275, 18 S.W.2d 1110. Also see 24 Am.Jur., "Gas and Oil", § 5, p. 22.

It is my opinion that adverse possession in oil or gas is limited to the oil or gas which is produced by the well or wells which has or have been drilled. This view is supported by Piney Oil & Gas Co. v. Scott, 258 Ky. 51, 79 S.W.2d 394, which the majority opinion overrules in part.

Once established, this adverse possession lasts so long as the well or wells continue to produce.

For the reasons given I most respectfully dissent.