## McDaniel v. Tarry.

(Decided May 10, 1929.)

COLEMAN & LANCASTER for appellant.

JOE H. WEAKS for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This is a suit for the rescission of a contract whereby the appellant, who was the plaintiff below, purchased

from the appellee 23 shares of the capital stock of the Universal Fly Exit Screen Company, a Delaware corporation, for the sum of $2,300 and, as an incident thereto, to recover the purchase price. The action was commenced as a common-law action for deceit, but in an amended petition the plaintiff asked for a rescission of the contract and on his motion the action was transferred to the equity docket. Upon submission of the case the court dismissed the petition, and the plaintiff has appealed.

The petition as amended avers in substance that on April 23, 1924, the plaintiff purchased from Eugene Tarry 20 shares of the capital stock of the Universal Fly Exit Screen Company, for which he paid the defendant the sum of $2,000, and that on August 30, 1924, he purchased 3 shares of the stock from the defendant, for which he paid him the sum of $300, and that on each of these dates the defendant was an officer of the corporation and knew its financial condition; that the corporation was insolvent when the defendant sold the stock to plaintiff and known so to be by the defendant, and that the defendant falsely and fraudulently represented that the corporation was a going concern and making money. The petition further averred that at the time the stock was purchased the defendant falsely and fraudulently represented to the plaintiff that the corporation owned a large manufacturing plant at Martin, Tenn., and that R. C. Tarry, a brother of the defendant, was in charge of this plant and that plaintiff would be given a position at a good salary; that the representations made by the defendant were false and known by him at the time to be false and were relied on by the plaintiff.

McDaniel testified that the defendant represented to him that the corporation owned 1,000 acres of land near Martin, Tennessee, and 4 acres of ground in the town, upon which was located a manufacturing plant, and that it had paid $60,000 for the land and $12,000 for the machinery and equipment. In testifying as to representations made to him by the defendant, he said: "He said it was a sure go; said he had investigated it and if he had not found it good he would not have invested $10,000 in it. He said it (the stock) was worth 100 cents to the dollar." These are the only representations relative to the financial condition of the corporaton that plaintiff claims were made to him by the defendant. He says the Tarrys promised him a position at a good salary,

but this was not a representation as to a past or existing fact. He admits that he went to Martin, Tenn., and was offered a position at $3 a day by R. C. Tarry, which he was unwilling to accept. Tarry then said that, when the plant was in full operation and a better position available, he would notify plaintiff. A few weeks thereafter the company was forced into bankruptcy.

Plaintiff and defendant lived at the village of Dexter, in Calloway county, and for several months before the transaction between them occurred, two representatives of the Universal Fly Exit Screen Company had been in the community endeavoring to sell stock. They had attempted to interest both plaintiff and defendant and in March, 1924, succeeded in selling to defendant 105 shares of stock for $10,500, for which he paid $750 in cash and executed to the corporation deeds to two farms, one located in Calloway county and one in Texas, each of which was valued at $5,000. The Texas land was later redeeded to the defendant or his deed to the corporation surrendered. He claims that this was in consideration for services rendered by him to the corporation in the purchase of the 1,000 acres of land in Tennessee. Defendant's brother, R. C. Tarry, who owned a farm in Calloway county, purchased stock of the corporation of the par value of $10,000 and was employed as manager of the Martin, Tenn., plant. He sold his farming machinery and equipment and went to Martin, Tenn., and assumed the duties of manager. He testified that the Martin plant was operating satisfactorily, but that he learned several weeks after he became connected with the corporation that it was in financial difficulties.

The main office was located at Nashville, Tenn., and a few months after the Martin, Tenn., plant began operations the corporation went into bankruptcy. It is apparent from the record that the corporation was forced into bankruptcy on account of obligations incurred by the main office and not connected with the Martin plant and concerning which neither the defendant, Eugene Tarry, or his brother, R. C. Tarry, had any knowledge.

There is no evidence upon which to base a conclusion that appellee was acting in bad faith when he sold the stock to appellant. He and his brother had invested large sums in stock and his brother was arranging his affairs preparatory to going to Martin, Tenn., to take charge of the branch plant located there. The company did own 1,000 acres of timbered land and machinery and

equipment, for which it had paid in cash and stock approximately the amounts represented by appellee. While the petition charges that he was an officer of the corporation, the evidence discloses that he was not an officer, but merely a stockholder, and appellant admtted that appellee never represented that he was an officer. Appellee denied making any representations as to the value of the stock and particularly that it was worth 100 cents to the dollar. But, conceding that such a statement was made, it amounted merely to an expression of opinion held by the seller as to value which did not make him liable for false representation. Vokes v. Eaton, 119 Ky. 913, 85 S. W. 174, 27 Ky. Law Rep. 358.

Under some circumstances statements of value may be affirmations of a specific material fact that may amount to fraudulent misrepresentations, as where the seller states as a fact the value of an article when he knows, or by the exercise of ordinary care should know, that it is worthless, or of much less value than represented and the means of investigation and verification are not at hand and the buyer must necessarily rely upon the representations as to value. But here, so far as appears from the record, the appellee believed the stock was worth par and any representations made by him as to value were made in good faith. No relationship of a confidential nature existed between the parties, and, in absence of such relationship, fraud will not be presumed, but the person charging fraud must assume the burden of proving it. Shacklette v. Goodall, 151 Ky. 20, 151 S. W. 23; Indiana National Life Insurance Co. v. Maines, 191 Ky. 311, 230 S. W. 54. In Livermore v. Middlesborough Town Lands Co., 106 Ky. 140, 163, 50 S. W. 6, 13 (20 Ky. Law Rep. 1704), it was said:

"To establish actionable fraud, or fraud against which equity will relieve—and, as we have seen, the same rule applies in Kentucky to both classes of cases—it must appear that the mispresentation was of a matter of material fact (as distinguished from opinion), at the time or previously existing (and not a mere promise for the future); must be relied upon by the person whose action is intended to be influenced; and must be made with knowledge of its falsity, or under circumstances which did not justify a belief in its truth. This is the doctrine deducible from the Kentucky decisions. There are some mod-

ifications of this doctrine, but they are chiefly by way of substitution of an equivalent for some one of the essentials necessary to constitute fraudulent misrepresentation; as in the cases where it is held that a fraudulent concealment of a material matter of fact is the equivalent of an actual misrepresentation, and the cases in which a statement made as of personal knowledge, but without knowledge, was held to be equivalent to a statement whose falsity was known.''

Tested by this rule the appellant failed to make out a case of fraud authorizing a rescission of the contract. Wherefore the judgment is affirmed.