## Sparks et al. v. Baker.

(Decided March 18, 1938.)

664

A. T. W. MANNING and EDWARD R. HAYS for appellants.
J. R. LLEWELLYN for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing in part and affirming in part.

In May, 1935, the appellants, J. K. Sparks and L. H. Sparks, brought this action in the Jackson circuit court, seeking recovery of judgment against the appellee, Jesse Baker, upon certain vendors' lien notes, aggregating $525, with interest, alleging that same were past due and owing and had been executed and delivered to them as representing the balance of purchase money due and owing them upon a certain boundary of land, situated in Jackson county, Ky., which they had sold and conveyed the said Baker.

Defendant answered, denying that he owed the amount sued for in the petition or more than the sum of $500 thereon.

Further he pleaded that plaintiffs had in January, 1933, executed him an option of purchase, in consideration of the sum of $25 then paid them therefor, upon this certain described boundary of land in Jackson county at the agreed price of $800, represented and recited therein as containing 92 acres and upon which the $25 paid for the option was to be credited, as a part of

the purchase price, should he exercise the option during the period for which given, from January, 1933, to February 1, 1934.

Further it appears that Baker, within the option period given, notified plaintiffs of his decision to purchase the land thereunder, and thereupon further, as called for by the option, made a cash payment of $350 on the purchase price and executed four purchase-money notes, aggregating $425, for the balance of the purchase price, though, as to this, appellants contend Baker then paid but $250, leaving a balance owing of $525.

Thereafter, on April 10, 1934, plaintiffs executed a deed with general warranty to the defendant for the boundary of land described in the option, according to the metes and bounds therein set out and described as containing 92 acres.

Further, upon receiving the deed, the first series of notes, which he had previously given on his exercise of the option, were surrendered to Baker, and in lieu thereof four new lien notes, containing a precipitation clause, were executed and delivered plaintiffs, which they contend aggregate $525, and a further note in the sum of $75, for money in the meantime loaned Baker.

Further, after denying that the amount alleged in the petition was due and owing plaintiffs, defendant pleaded by way of counterclaim that he, since purchasing the boundary of land from plaintiffs contracted for in their option and as set out and described in their deed made him, had learned that plaintiffs did not own all of the tract therein represented and described by metes and bounds as conveyed him, and which by their deed they had purported to convey him, but that within the boundary of land they had attempted to convey him, there were about 45 acres which they did not own, and which were a part of an adjoining tract owned by the War Fork Land Company, a West Virginia corporation.

Further, defendant counterclaimed that plaintiffs knew, when making him their deed, that they did not own the 45 acres or more of land represented as embraced in this overlap, but that same was embraced within the boundary of land conveyed him for the fraudulent purpose of inducing the defendant to buy said land; and that, had he known that plaintiffs did not

own the 45 acres of land wrongly included within the boundary, for which he had agreed to pay them $800, he would not have bought same.

Further, defendant alleged that this 45-acre overlap of land they attempted to convey him, but which they did not own, was of the reasonable value of $600, it being the best and most valuable part of the land boundary deeded him, and by reason of the resulting gross deficiency in the quantity of land actually conveyed him from what they by their option had contracted to convey him, he prayed for a cancellation of the deed, with a lien for his purchase money paid plaintiffs on the land and, further, for a judgment against them for the value of the improvements made and placed by him on the land since its purchase in the amount of some $1,300.

Issues were joined by a reply, traversing the allegations of the counterclaim and further pleading that it was true that their deed executed defendant contained a mistaken call in its eleventh line, namely, "N. 24 E. 118 poles to a white oak and maple," which was erroneous in its degrees, in that the call should have been, "N. 84 E. 118 poles to a white oak and maple"; that the mistake in this call had been made in describing this eleventh line of the boundary of land in a judgment and order of sale made many years ago, before the deed in question was executed to the defendant; that the mistake in the call was not known to either of the plaintiffs at the time the option was executed to the defendant, but thereafter, yet before the deed was executed in April, 1934, and before defendant had paid any sum on the purchase of said boundary of land, except the $25 paid for the option, this mistake was discovered by plaintiffs and discussed with defendant, and the records of the previous conveyances under which plaintiffs held title to the boundary of land here involved were examined by them, at which time it was established, by their investigation made, that the aforesaid call of the deed was erroneous, whereupon plaintiffs at once offered to return to defendant the $25 he had paid them for the option and to rescind their contract of purchase of this boundary of land, which they had bought and sold under a mutual mistake as to its true calls.

They further both alleged and testified that defendant thereupon claimed to be satisfied and willing to take and receive a conveyance of the land with this erroneous

call from the plaintiffs, and that he did so with full knowledge that said mistake existed in said call; and, further, that plaintiffs, when executing the deed, would have corrected therein this mistaken call of the option but for the fact that defendant had requested and insisted that the boundary be set out in the deed as it was in the option and without correction of this mistaken call, for the reason that although he knew plaintiffs were without title to the overlap of land located between the false and true boundary, yet no one could take it from him if it were included in the conveyance to him; that only because of defendant's insistence that the boundary in the deed be made according to that given in the option was the erroneous call inserted in the deed, but no part of the overlap was ever sold or attempted to be sold by plaintiffs to defendant, nor was it paid for by defendant as included in the tract's acreage sold him; nor had they been paid or claimed any benefit or consideration therefor from defendant.

By the third paragraph of the reply, it was affirmatively alleged, in defense of defendant's counterclaim for improvements, that the boundary of land here involved was at the time of its sale and conveyance to the defendant covered with a virgin growth of timber, of far greater value than the land contained in the boundary, and that the defendant, instead of having increased its value by constructing improvements thereon, had dissipated its value, by cutting and removing the valuable timber therefrom, without placing any permanent improvements of any kind or value on the land or in any wise increasing its value.

The issues being thus joined, the parties took a voluminous amount of proof in support of their respective contentions, whereupon the cause was submitted for judgment, when the chancellor found and adjudged as follows: That the notes filed with the petition and sued upon in the aggregate amount of $500 represented the true amount of the balance of purchase money owing and remaining unpaid on the land; that the plaintiffs never owned any part of the land included by the call, "N. 24 E. 118 poles," but that the error of such call was due to a mistake made by the master commissioner when executing a deed, in April, 1923, pursuant to a decretal sale of this old original survey, by changing the call of its eleventh line from "84" to "24" degrees.

Next, the opinion, by way of stating and discussing the conflicting evidence and contentions presented by the parties, together with the court's finding and conclusion based thereon, thus continues:

"At the time of the making of the written contract of option, it is agreed by both parties that neither knew or had knowledge of this mistake. For plaintiffs it is claimed that after the execution of the option, and before the execution of the deed, it was learned that there was this mistake in the call. L. H. Sparks testifies that 'before we made the deed, he (Baker) came over here and said there was a mistake in the calls of the option * * * and my deed. We went to the courthouse and looked this up, and there was a mistake in the calls in the option and deed that I had. I asked him then * * * if he wanted the farm, that if he didn't I would pay him his money back that he had paid on the option. He told me that he was a good surveyor himself and that he wanted me to make the deed just like my deed * * * and it would be all right and we made the deed that way.' * * *

"For Mr. Baker, it is contended, and he swears, that he never knew or had any information of this mistake until after the $350 was paid and after the execution of the deed some considerable time.

"If the defendant actually knew that this mistake was in the deed at the time he accepted it and accepted it for the purpose of attempting to hold it against the true owner * * * then the defendant would be estopped from claiming anything whatever from plaintiffs on his counterclaim. He would have been attempting to get the land (in the overlap) when he would not have been entitled to it, * * * in addition to the 92 acres which he knew he was obtaining by reason of the deed."

On the other hand, the memorandum opinion continues, the plaintiffs admit conveying the overlap of land by warranty deed to the defendant, when knowing they did not own it, thereby culpably aiding defendant in the chance asked, of holding land belonging to another, and that, being so derelict in their conduct, the plaintiffs were not in a position to deny defendant's

right to claim what they deeded him or to be reimbursed for a shortage in the acreage conveyed or for a breach of their warranty.

Such being the chancellor's findings, his conclusion was that neither of the parties was without fault, but rather that both were in pari delicto.

Also, that while Baker claims he is entitled to a rescission of his purchase of this land, with right to have cancellation of the deed made him, for the reason claimed, that he did not know at the time of its execution to him and his payment then made upon the land, of the erroneous call in the boundary, whereby he was conveyed the 45-acre overlap lying between the erroneous and true call of the boundary, the plaintiffs claim, with equal insistence, that just the opposite is true and are very positive that Baker did have actual knowledge that he was receiving land, under this erroneous call of his deed, which belonged to another. Baker was held corroborated in his contention, as were also the plaintiffs, by the option and the deed, in that "it is hard for the court to understand how anyone would convey land and warrant it * * * when they knew they did not own it, and that it was owned by another."

Further, the chancellor found that the evidence was conflicting, in that defendant claimed that he had improved the land sold him to practically twice the amount paid for it; while, on the other hand, plaintiffs claim that the land was worth more with the timber on it and when sold defendant than at the present time, when denuded of its timber, for which it was chiefly valuable, with only cheap and temporary improvements constructed thereon by defendant with part of the timber or lumber taken from the land.

Such being the factual situation presented, the chancellor concluded, "taking either horn of the dilemma," that the parties were not entitled to relief, upon the principle that "he who asks equity must do equity" and "he that comes into equity must do so with clean hands," and that, as neither of the parties here so presented themselves or their claims, they should be left without relief or where they were found; and therefore adjudged that the plaintiffs' petition be dismissed, also the defendant's answer and counterclaim, with the direction that each of the parties pay their respective

costs, to all of which ruling and judgment both parties objected and excepted. Plaintiffs and defendant having respectively asked for and been granted an appeal and cross-appeal and both having been prosecuted, they are now before us.

Appreciating fully the stated dilemma of the learned chancellor in his effort, upon this record, to determine on which side, if either, any equity might rest, entitling either plaintiffs or defendant to the relief sought, we are yet of the opinion that a consideration of the pleadings here will very helpfully tend to assist us and lessen the difficulty presented in the determination of this question.

The rule is well established, as here invoked by the learned chancellor, that parties found to be alike engaged in a fraudulent attempt to obtain a neighbor's or another's property are not the objects of the special solicitude of the courts, and that if it eventuates they are caught in their own toils and themselves become the sufferers, such result may rightly be considered the legitimate consequence of their own violation of the rules of law and morality, and their unrelieved loss becomes the sanction equity imposes upon them, in that they had violated her rules enjoining fair dealing and honest conduct. Neblett v. Macfarland, 92 U. S. 101, 23 L. Ed. 471. However, here the evidence is not conflicting as to the admitted fact that the defendant, Baker, after receiving the deed executed to the boundary of land in question in April, 1924, moved onto the land and proceeded to use and exercise his position and rights as owner of the tract under his deed and to cut and sell the merchantable timber off of it; that he continued to so act and use the place, and to profit in the sale of its timber for a long while after discovering that there had been a mistake made in one of the calls of his deed, and thus, according even to his own claim and contention, continued to so use and change the character and value of the place as to render it impossible for him to restore it to his vendors in the condition or of the value when it was received.

We concede that had this boundary of land, conveyed the defendant by warranty deed, been accepted by him in ignorance of the error (whether intentionally or mistakenly made by his grantors) in the call of one of its boundary lines, resulting in the conveyance of more

land than they had to the defendant, upon his discovery of the material shortage in the quantity of land actually conveyed him; or that it was less than he was entitled to receive under the mistaken call of his deed, he would be entitled to a rescission of his contract and recovery of the purchase price paid on the land, together with the amount its value was enhanced by the improvements placed thereon. But such right of recovery, recognized as given a purchaser under such circumstances, is quite different from that here asserted by defendant, where he has held and retained the possession and use of the land, obtained under this erroneous deed made him, *after* discovering the error committed by his grantors in the deed, as if satisfied with his purchase; and, further, after discovering the error, had enriched himself by the cutting, sale, and removal of its timber; and not until sued for the balance owing on the purchase price did he ask for a rescission of his contract of purchase, with restitution of his payments made on the purchase price and the value of the improvements placed thereon.

The appellee, by his counterclaim, as stated supra, alleged that the plaintiffs here, when knowing that they did not own this overlap included within the boundary conveyed him but that it was without their true boundary and belonged to another, did nonetheless convey him the whole boundary, when knowing it contained the false call therein, for the purpose of thereby fraudulently inducing him to purchase it.

However, such claim of his having been deceived and defrauded by the plaintiffs was never made until more than a year after the land was deeded to him, or not until long after the error in the boundary was discovered by him, or, in fact, not until sued by his grantors for the remaining purchase price owing upon the place, when, now, in the hope of defeating payment, such contention is belatedly presented by his answer and counterclaim.

While it may be conceded that the rule is well established that where a party has been induced to enter into a contract by fraudulent representations, he may, upon discovering the fraud, rescind the contract, it is yet by the great weight of authority held that if the party defrauded continues to receive benefits under the contract, after he has become aware of the fraud, or if he conducts himself with respect to it as though it were a sub-

sisting and binding engagement, he will be deemed to have affirmed the contract and waived his right to rescission. In other words, one who has been misled must act promptly, upon learning the truth or discovering the falsity of the statements relied on, in disaffirming the contract, so as to give the other party opportunity of rescinding it and restoring them to their original position.

> "The party deceived is not allowed to go on deriving all possible benefit from the transaction, and then claim to be relieved from his own obligation by seeking its rescission." 4. R. C. L., sec. 26, p. 514; Dennis v. Jones, 44 N. J. Eq. 513, 14 A. 913, 6 Am. St. Rep. 899.

Furthermore, the plea of fraud was here made by defendant, in charging the appellants, as stated, with knowingly executing the deed in question to him, when embracing a false and untrue call in its boundary, effective to greatly increase the acreage embraced within the boundary, for the fraudulent purpose of deceiving and cheating, by such false representation, the defendant.

If such alleged fraud was in fact practiced upon the defendant, he was entitled to a rescission of the contract upon his timely disaffirmance upon his establishing by his proof that the fraud charged was practiced upon him. But as to this the trial court must be taken to have here found otherwise, in denying him the rescission sought upon such grounds.

However, fraud is never to be presumed, but must be proved, where charged, and the burden is upon the one charging fraud to prove it, for fraud, like other facts, must be proven, and cannot be presumed or inferred except from proven or admitted facts. Marksberry v. First National Bank of Owensboro, 194 Ky. 401, 239 S. W. 461; Larmon v. Miller, 195 Ky. 654, 243 S. W. 939; McDaniel v. Tarry, 229 Ky. 396, 17 S. W. (2d) 252.

Here the chancellor's finding of fact from the evidence, which was amply sufficient to sustain it, was (as shown by his ruling, dismissing defendant's counterclaim charging fraud) that defendant had failed to establish the fact charged, that plaintiffs had fraudu-

lently conveyed him the false boundary of land in question, embracing therein a large quantity of land they knew was not owned by them.

It is admitted that plaintiffs had in fact conveyed to defendant, by their deed executed him, the 92 acres of land described by the deed as contained within the boundary conveyed and for which it is shown the agreed purchase price of $800 was to be paid to the plaintiffs in the manner stated, as evidenced by the lien notes given plaintiffs therefor by defendant and found due and owing by the chancellor. Also it is further admitted that the defendant has never been ousted or disturbed in his possession and enjoyment of this 92-acre tract, which plaintiffs allege they conveyed the defendant at his special instance and request after the discovery by both him and them of this error in the degrees of one call of their deed. Such being the situation, it is our conclusion that the defendant has been deeded, and received under the deed, the 92 acres of land thereby described and represented as sold him.

From this it follows that a boundary of land described as containing 92 acres, and which it did contain, having in fact been both contracted for under the option and conveyed defendant by the deed, and he having, for more than a year after discovering an error in a call of it effective to embrace more acreage than the 92 acres called for, manifested by his conduct that the deed he received, even if so erroneous, was a binding and subsisting agreement of purchase of the land boundary thereby conveyed him, defendant should be now held to have affirmed the contract and to have waived any right to rescission he might have had, if asserted upon his first discovering the error.

For the reasons indicated, we conclude that because of the court's error in dismissing plaintiffs' petition, seeking recovery upon defendant's lien notes, its judgment must be reversed, but that its finding that the aggregate amount of $500 represents the balance of the purchase money owing plaintiffs upon the land conveyed defendant must be approved. Therefore, the cause is remanded, with the direction that the judgment be so corrected and modified as to allow a recovery to the appellants upon the notes sued on, in the amount stated, with interest and costs, as prayed.

Judgment reversed in part and affirmed in part.