J. E. VAUGHT ET ALS. v. J. W. WILLIAMS ET ALS.

(Filed 3 January, 1919.)

1. Wills—Probate—Statutes—Copies—Deeds and Conveyances.

Under the provisions of ch. 393, Laws of 1885, now incorporated in sec. 3133 of the Revisal, it is not required that a will executed and admitted to probate in another State be also probated in this State by the appearance and examination of the attesting witnesses in order to pass title to property here when a copy or exemplification thereof duly certified and authenticated by the clerk of the court in which it had been proven and allowed shall be allowed, filed and recorded in the proper county in this State.

2. Same—Subsequent Probate.

Where a deed to land has been executed by the executor under a power in the will prior to its proper probate, and thereafter the will is duly admitted to probate, this would relate back and authorize the execution of the deed.

3. Constitutional Law—Statutes—Wills—Probate—Executors and Administrators—Deeds and Conveyances.

Chapter 90, Laws of 1911, validating conveyances of land made prior to 1911 by nonresident executors acting under a power of sale contained in a will of a citizen of another State, etc., executed according to the laws of this State and duly proven and recorded in such other State, etc., and who had not given bond and obtained letters of administrations in this State prior to the execution of such deed, is within the constitutional authority of the Legislature, and valid.

4. Constitutional Law— Statutes— Executors and Administrators— Wills— Probate—Bonds.

The failure of a nonresident executor to give bond or to qualify under the will in North Carolina cannot vest any interest in lands situated here-

in the heir at law, as such omission does not affect the validity of the will, but only the power to execute it here; and ch. 90, Laws of 1911, validating conveyances of lands in North Carolina by nonresident executors, under certain conditions, who have not qualified here or given the bond, is not unconstitutional as impairing a vested right.

5. **Executors and Administrators—Wills—Deeds and Conveyances—Seals—Heirs at Law—Equity.**

A deed to lands made by the executor, though not under seal, in pursuance of a power contained in the will, is enforcible in equity against the heir at law, especially when he is provided for in the will and is benefited by the conveyance.

6. **Pleadings—Deeds and Conveyances— Seals— Evidence —Record— Executors and Administrators—Wills.**

It is not necessary to allege a defect or mistake in deed not under seal, conveying land, when made by an executor under a power contained in the will to enforce it in equity against the heir at law, such fact appearing on the face of the record and its establishment dependent entirely on the documentary evidence.

7. **Executors and Administrators—Wills—Deeds and Conveyances—Seals—Equity—Contracts to Convey.**

A seal is unnecessary to an executor's deed made under a power in the will, to convey the equitable title, as against the heir at law, provided for in the will, and may be regarded as a contract to convey, wherein the seal is unimportant.

APPEAL by defendants from *Cline, J.,* at the June Special Term, 1918, of AVERY.

This is an action to recover a tract of land in Mitchell County, brought by the plaintiffs, who are the heirs of John L. Vaught, against the defendants, who are purchasers under a deed executed by the executrix of the said Vaught.

John L. Vaught died in Tennessee, of which State he was a resident, on 27 February, 1907, leaving a will in which he empowered and directed his executrix to sell said tract of land and to apply the proceeds to the payment of his debts and to make deeds to the purchasers. The executrix was a resident of Tennessee. The will was executed according to the laws of this State and was duly probated and recorded in Tennessee.

In June, 1907, it was probated and recorded in Mitchell County on an exemplification and certification by the clerk of the court in Tennessee, in which it was probated there, and again in 1910 it was probated and recorded in said county of Mitchell on the oath and examination of the subscribing witnesses.

In July, 1907, the executrix sold said land under the power in said will to those under whom the defendants claim, who paid the purchase money and received a deed from the executrix, which was duly regis-

tered. The executrix did not file bond or qualify in this State prior to the execution of the deed, and the deed was not under seal.

The plaintiffs objected to the introduction of the will recorded on the certificate of the clerk on the ground that the probate was invalid because it was not made and had on the oath and examination of the subscribing witnesses, and to its introduction in evidence on the second probate because this was after the deed was made. The objections were overruled and the plaintiffs excepted.

The plaintiffs also contended that the deed was void because the executrix had not filed a bond or qualified in this State before its execution, and also because it was not under seal. The court ruled against each of these contentions and the plaintiffs excepted.

Judgment was entered in favor of the defendants and the plaintiffs excepted and appealed.

*Councill & Yount, F. A. Linney, J. W. Ragland, E. S. Coffey, and Bingham & Bingham for plaintiffs.*

*Lee F. Miller, W. C. Newland, S. J. Ervin, and Lowe & Lowe for defendants.*

ALLEN, J. The first objection of the plaintiffs is to the admission in evidence of the will of John L. Vaught, under which the defendants claim, upon the ground that it was recorded in this State without authority of law, in that the clerk, ordering the will to record, failed to require the appearance and examination of the attesting witnesses, and they rely on *Hunter v. Kelly,* 92 N. C., 285, which seems to sustain this position.

It was held in that case that the will of a nonresident, probated and recorded in the State of the domicile, could not be admitted to probate in this State upon a certified copy by the clerk of the court where it had been probated, and that such will would not be admitted in evidence unless reprobated in this State by an examination of the witnesses in person or on commission; but the decision was made at February Term, 1885, on a construction of section 2155 of the Code of 1883, now Revisal, sec. 3131, and at a time when the succeeding section 2156, now Revisal, 3133, which is peculiarly applicable to nonresidents, did not contain the provision, which was supplied by chapter 393, Laws of 1885, and is incorporated in Revisal, sec. 3133, that whenever the will of·a nonresident is duly proved and allowed in the State of the domicile "a copy or exemplification of such will duly· certified and authenticated by the clerk of the court in which such will has been proved and allowed, if within the United States," shall be allowed, filed, and recorded, etc.

The fact that the will was executed according to the laws of this State, another requirement of the statute, appears from the will and the proofs.

It is highly probable that the omission in the statute as to the probate of the wills of nonresidents, pointed out in *Hunter v. Kelly,* which was decided 9 March, 1885, was called to the attention of some member of the General Assembly, then in session, and that as a result and to cure the defect the act of 1885, ratified 11 March, 1885, was enacted. We are, therefore, of opinion the will, being recorded on the certification of a clerk after the amendatory act, was properly admitted in evidence. But if the objection made by the plaintiffs was valid, and a reëxamination of the witnesses in this State was necessary, the record shows that the witnesses did appear before the clerk of Mitchell, and that the will was again probated and ordered recorded on their examination in 1910, and this would relate back and would authorize the execution of the deed by the executrix prior thereto. *Scott v. L. Co.,* 144 N. C., 45.

The plaintiffs further contend that if the will was properly admitted in evidence, it furnishes no authority to make the sale of the land, or to execute the deed pursuant thereto, on account of the failure of the executrix to file the bond required by subsection 1 of section 28 of the Revisal, or to qualify in this State, and the case of *Glascock v. Gray,* 148 N. C., 348, decided after the sale, so holds; but the defendants seek to avoid the effect of that decision by relying on the curatice act of 1911, ch. 90, which is as follows: "That subsection 1 of section 28 of the Revisal of 1905 be and the same is hereby amended by adding at the end of said subsection the following words: '*Provided further,* that if any nonresident executor, acting under a power of sale contained in the last will and testament of a citizen and resident of another State or foreign country, executed according to the laws of this State and duly proven and recorded in the State or foreign country wherein the testator and his family and said executor resided, and now or hereafter recorded in this State, shall have sold and conveyed real estate situated in this State prior to January 1, 1911, then said sale and conveyance so had and made shall be as valid and sufficient in law as though such executor had given bond and obtained letters of administration in this State prior to the execution of such deed.' "

The question, therefore, presented on this branch of the appeal is as to the power of the General Assembly to pass the act, and as to its effect on the plaintiffs, who are heirs of the testator. Mr. Cooley says in his work on Constitutional Limitations (7th Ed.), 531: "If the thing wanting or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the Legislature might have dispensed with by prior statute, then it is not beyond the power of the Legislature to dispense with it by subsequent statute. And if the irregularity consists of doing some act, or in the mode or manner of doing some act which the Legislature might have made immaterial by

prior law, it is equally competent to make the same immaterial by a subsequent law."

"In general, statutes curing defects in acts done or authorizing the exercise of powers which act restrospectively are valid, provided the Legislature originally had authority to confer the powers or authorize the acts. The Legislature may legalize conveyances made by executors, administrators, guardians, or other persons in similar positions of trust, which are irregular because of some omission or lack of power on the part of such trustee." 8 Cyc., 1023.

This principle has been fully recognized in this State, and acts validating probates and curing defects in other instruments which would have made them inoperative have, as between the parties, been frequently sustained. *Tatom v. White,* 95 N. C., 458; *Gordon v. Collett,* 107 N. C., 363; *Barrett v. Barrett,* 120 N. C., 129, and other cases, 6 R. C. L., 321.

Speaking of certain curative acts, then under consideration, *Justice Walker* says, in *Weston v. Lumber Co.,* 160 N. C., 268: "The statutes are highly remedial and should be liberally construed, so as to embrace all cases fairly within their scope. It is constructive legislation; we are saving titles, and not destroying them. It has been said that 'such acts are of a remedial character, and are the peculiar subjects of legislation. They are not liable to the imputation of being assumptions of judicial power.' *McFaddin v. Evans Co.,* 185 U. S., 505. It was further held that to validate defective probates and registrations is a proper exercise of legislative power and favored by the courts."

What, then, is the effect of the act on the heirs, who claim that they have vested interests which cannot be disturbed by subsequent legislation, and in what does this vested interest consist?

The failure of the executrix to file the bond or to qualify did not affect the validity of the will, but simply withdrew the power to execute its provisions, and the heir therefore had no interest in the land, because there was a will, executed and probated according to law, and the claim of the heir cannot arise except upon the death of the ancestor intestate. The right, then, of the heirs, if any exists, is in the continuance in force of the statute requiring the bond to be filed and the qualification of the executrix, which operated as a prohibition on the executrix to perform the duties imposed by the will, and this is not within the protection of the principle which forbids the divesting of vested rights.

In the matter of the estate of Patterson (132 A. S. R., 126) the Supreme Court of California had a similar question under consideration, and said: "The testatrix, Mrs. Patterson, had exercised her testamentary power by a duly executed will, which would take effect upon her death, but which could not be admitted in evidence against the heirs

until after it was probated. In her lifetime, but without her knowledge, it was destroyed in a public calamity. Because of its destruction in her lifetime, the probate court, under the law as it existed at her death, could not allow it to be probated because there could be no legal proof of it. After her death the Legislature removed this impediment by making wills destroyed in a public calamity provable. The heirs had no vested right to have this law forbidding the probate of such wills continued in force. Their right to the estate of the ancestor was given by statute, and it was contingent upon the fact of there being no will · in existence which could be proved."

A case with the facts much stronger in favor of the heir than in this is *Watson v. Mercer,* 8 Pet., 88, which is approved in *West Side Belt. R. Co. v. Pittsburg Construction Co.,* 219 U. S., 92, and the facts and decision summarized as follows: "In *Watson v. Mercer,* 8 Pet., 88 (8 L. Ed., 876), such an act was sustained against a charge that it divested rights and impaired the obligation of a contract. The act considered made valid the deeds of married women which were invalid by reason of defective acknowledgments, and avoided a judgment in ejectment rendered against one of the parties to the action because of such a defect in a deed relied on for title. The controversy was between the successor by descent of the married woman and the grantee in the deed. It was said in the argument that the descents had been confirmed by two judgments of the Supreme Court of the State against the deed, adjudicating it to be void on points involving its validity, which judgments, it was contended, were conclusive evidence that the deed was no deed, and that the rights acquired by descent were absolute vested rights. The act was nevertheless sustained, as we have stated."

"The heirs have no vested right in having any law relating to a pending probate continued in force." 6 R. C. L., 315.

A case very much in point, and by fair inference completely so in principle, is *Vanderbilt v. Johnson,* 141 N. C., 370. In that case the plaintiff relied on the will of John Strother, a resident of Tennessee, as a part of his title. The will was executed in accordance with the laws of this State, but the probate was not taken as required by our statutes, and this appeared on the face of the record of the will in this State.

Long afterwards the General Assembly passed an act curing the defect and validating the probate in this State. The act was sustained, The Court saying in the course of the opinion, "The defendants do not claim under a deed executed by the heirs at law of John Strother before the passage of the act, and therefore no vested right intervenes." We therefore hold that the act of 1911 is a valid exercise of legislative

authority, and that it is operative against the plaintiffs, the heirs of the testator.

The remaining question is as to the effect on the title of the defendants of the failure of the executrix to affix a seal to her deed. It has been held in *Patterson v. Galliher,* 122 N. C., 512, and in other cases that a paper-writing not under seal will not pass the legal and equitable title to land, but the instrument signed and delivered by the executrix was in execution of a power conferred by the will of the testator, and, as said by *Lord Alvanley* in *Chapman v. Gibson,* 21 Eng. Rul. Cas., 390: "Whenever a man having power over an estate, whether ownership or not, in discharge of moral or natural obligations, shows an intention to execute such power, the Court will operate upon the conscience of the heir to make him perfect this intention. This is an intelligible principle. Very early, where the testator showed an intention to provide for debts, this Court would supply the defect against the heir."

"Equity will afford its aid where there has been a defective execution by a formal or appropriate instrument; thus if the instrument, whether it be a deed or will, is by the power required to be executed in the presence of a certain number of witnesses, and it is executed in the presence of a small number, or if it is required to be signed and sealed, and sealing is omitted, equity will supply the defect. *Wade v. Paget,* 1 Bro. C. C., 363; *Cockerell v. Cholmeley,* 1 Russ. & My., 424; 1 C. & F., 60." *Tollett v. Tollett;* White & Tudor Lead. Cases in Eq., 372. . . .

"If a power is required to be executed in the presence of three witnesses and it is executed in the presence of two only, equity will interfere in such a case. So if the instrument, whether it be a deed or will, is required to be signed and sealed and it is without seal or signature, equity will relieve." Story Eq. Jur., 186.

Mr. Bispham, in his Principles of Equity, p. 329 *et seq.,* states the doctrine as follows: "The occasion which call for the interposition of equity on the ground of mistake are, of course, very numerous, and it would not be possible, even if it were desirable, to enumerate them all without in fact giving a digest of the reported decisions under this head. There is, however, one class of cases in which the equitable doctrine is of an anomalous character and requires particular notice, and that is the defective execution of powers." . . .

"Equity will not interfere in the case of a nonexecution of a power. It will correct defects in an attempted execution; but it will not supply an execution if none has been attempted." . . .

"The defects which will be aided in equity are of two kinds: first, where there has been an instrument executed from which an intention to exercise the power may be inferred, but the instrument itself is in-

formal or inappropriate; and, second, where there has been a defective execution of a formal and appropriate instrument." . . .

"Of the second class of defects which will be sided in equity, familiar instances are found in those cases in which the instrument by which the power is to be exercised is required to be executed in the presence of a certain number of witnesses, and is actually executed in the presence of a smaller number, or in which it is required to be signed and sealed and sealing is omitted." . . .

"It may be stated, as a general rule, that mere volunteers will not be assisted, but that aid will be given to purchasers for value, mortgagees, lessees (for mortgagees and lessees are purchasers *pro tanto*), creditors and persons who have a meritorious standing." . . .

"In the third place, equity will aid the defective execution of a power against a remainderman and also, in general, against the heir-at-law. Whether it will be aided as against an heir-at-law who is unprovided for seems to be still undecided."

The doubt expressed as to the administration of the equity against an heir unprovided for arose from the differences of opinion between *Lord Alvanley* in *Chapman v. Gibson,* 3 Bro. C. C., 229, and *Lord Rosslyn* in *Hills v. Dawnton,* 5 Ves., 557, but both agreed that in any event the heir must be totally unprovided for, and that the courts would not inquire into the *quantum* of the provision; and it appears in this record that the testator left lands in Tennessee undevised, and for the benefit of the heirs, worth approximately $20,000. Nor is it necessary that there should be an allegation of the defect or mistake and a prayer for correction when it appears on the face of the record and is dependent entirely on documentary evidence, as in this case. *Geer v. Geer,* 109 N. C., 679; *Westfeldt v. Adams,* 131 N. C., 379; *S. c.,* 135 N. C., 592.

The Court says in *Geer v. Geer,* and this is approved in the other cases: "It has been fully settled that a plaintiff may recover in ejectment upon an equitable title (*Taylor v. Eatman,* 92 N. C., 601; *Murray v. Blackledge,* 71 N. C., 492; *Condry v. Cheshire,* 88 N. C., 375); and where, upon the face of record evidence, like that before us, the court would in a direct proceeding, as a matter of course, order the correction of a merely formal defect in the execution of its decree, it is unnecessary (though perhaps the better practice) to set forth the facts in the pleading. The same is true where it appears from the documentary evidence that the dry legal title only is outstanding in another; but where it is necessary to establish such equitable ownership by extrinsic testimony, then the facts should be pleaded."

These authorities also establish the right to recover land upon an equitable title, and if the paper signed by the executrix is not a deed because not under seal it would be upheld as a contract to convey which

need not be sealed (*Mitchell v. Bridgers,* 113 N. C., 63) ; and as those under whom the defendants claim have paid all of the purchase money, they would be the owners in equity, which interest, if sufficient to sustain an action as plaintiffs, would be equally effective as a defense to prevent a recovery. See *Tunstall v. Cobb,* 109 N. C., 316, in which a paper not under seal, relied on as a release, was treated as a contract to convey, and *Flowe v. Hartwick,* 167 N. C., 452, in which the same effect was given to an undelivered paper in form a deed.

We have considered the legal questions presented, and are of opinion the judgment must be affirmed, and this conclusion seems to be according to the right and justice of the case.

The testator bought the land in controversy in October, 1905, for $7,000, and a part of the purchase money was unpaid at his death. He directed in his will that this land be sold for the payment of his debts, and in July, 1907, within two years from his purchase, his executrix sold the land for $15,500 and applied the proceeds to the payment of debts in exoneration of undevised lands in Tennessee of the value approximately of $20,000, which descended to the plaintiffs, his heirs.

Affirmed.