ED. N. VANCE v. E. C. GUY, D. T. VANCE, LLOYD ALDRIDGE, AND
JEFF HOWELL.

(Filed 13 October, 1943.)

**1. Minerals and Mines § 2: Estates § 1—**

When rights to the minerals in land have been, by deed or reservation, severed from the surface rights, two distinct estates are created, and the estate in the mineral interests is subject to the ordinary rules of law governing the title to real property.

**2. Minerals and Mines § 3: Adverse Possession § 17—**

The presumption, that one in possession of the surface of land has also possession of the minerals, does not apply when these rights have been segregated.

**3. Adverse Possession §§ 5, 9a—**

Where one enters into possession of land, under a deed purporting to convey the land by definite lines and boundaries, without reservation or exception, his deed constitutes colorable title to the entire interest and estate in the land, in accordance with the maxim, *cujus est solum, ejus est usque ad coelum et ad inferos.*

**4. Adverse Possession §§ 3, 6—**

Possession of real property, to be adverse, must be actual, open, decided and as notorious as the nature of the property will permit, indicating assertion of exclusive ownership and of an intention to exercise dominion against all other claimants. Such possession must be continuous, though not necessarily unceasing, for the statutory period, and of such character as to subject the property to the only use of which it is susceptible.

**5. Adverse Possession § 9b—**

Where one enters into possession of land, under a colorable title which describes the land by definite lines and boundaries, and occupies and holds adversely a portion of the land within the bounds of his deed, by construction of law his possession is extended to the outer bounds of his deed, and possession so held adversely for seven years ripens his title to all the land embraced in his deed which is not actually occupied by another.

**6. Adverse Possession §§ 3, 19, 20—**

Where plaintiff's evidence tends to show his actual possession of a part of a 375-acre tract of land and his continuous operation of three or four mines thereon, the question becomes one not of extent of possession but of its character, and a charge to the jury, that plaintiff's possession would depend upon the size of his operations, was error.

**7. Evidence § 34—**

A will, duly proven and allowed in New York according to our statute, C. S., 4152, when it appears that an exemplified copy thereof so showing has been recorded here in the county where the land lies, is admissible in evidence in the courts of this State, as a link in a chain of title.

APPEAL by plaintiff from *Pless, J.,* at July Term, 1943, of AVERY.
New trial.

Plaintiff instituted this action to establish his title to the mineral
rights in a tract of land containing 375 acres, and to recover for mica
alleged to have been mined and removed therefrom by the defendants.
The mineral rights in 68 acres of the tract were disclaimed. The plain-
tiff's title to the surface rights in the land described was not controverted,
but defendants alleged that the mineral rights had been by previous
conveyances segregated, and that the defendants were the owners of the
minerals and mineral rights in said land as evidenced by chain of con-
veyances from the original title owner. They denied trespassing on any
property of plaintiff.

Plaintiff sought to establish his title to the mineral rights claimed by
showing adverse possession under color of title for more than seven years
prior to the institution of the action. In support of his contention
plaintiff testified in substance that he entered into possession of the land
under deed dated 5 March, 1925, which purported to convey the land
to him by definite boundaries, in fee simple, without reservation. He
offered evidence tending to show that at the time he acquired the land
mining was being done on the land, and that these operations were con-
tinued by him, and by those who operated under his lease and who paid
him royalties, up to the present time; that he continuously operated the
mine known as the Branch mine, and that no other person other than his
employees and lessees had mined on the land, except on the 68-acre tract.
He further testified that though he moved his residence off the land in
1931 he had agents and people living on the place looking after, leasing
and working the mines, and the work was continued by his employees and
representatives. It was testified there was another mine on the land
known as the Pittman mine operated by plaintiff's lessee Buchanan, and
after the latter's death plaintiff's employees looked after the work in the
mine and collected royalties, continuing until 1938 and 1939. Plaintiff
testified that from another mine called Black mine some mica and feld-
spar were taken, after plaintiff acquired the property, and for which he
received royalties. "I know somebody worked every year in the Black
and Pittman mines." The amount of royalties received was sufficient
to pay interest on plaintiff's $6,000 debt on the land. Plaintiff also
testified that at the Branch mine there was an open cut 40 to 75 feet
wide, 600 to 800 feet long, and from 3 to 20 feet deep.

There was other evidence tending to show that the workings on plain-
tiff's land were "small operations"—carried on with pick, shovel and
wheelbarrow; that the so-called mines were small openings, not more
than a quarter to half an acre in extent, including the surrounding
dumps. A shaft not completed was being sunk at the time of the suit.

VANCE v. GUY.

There was evidence tending to show that defendants owning adjoining land had excavated under plaintiff's land and removed a large amount of mica therefrom. It was alleged that the value of the mica wrongfully removed amounted to $84,000.

Defendants offered deeds showing conveyance to them of the minerals and mineral rights in and under the land, and connected chain of title from the original grant from the State in 1796.

The court charged the jury, among other things, that from the deeds and conveyances offered the defendants had the superior title to the mineral rights involved, and that the plaintiff, holding the inferior or junior title, under the deed of 1925, must show adverse possession of the mineral rights under the colorable title of that deed. To the court's construction that defendants' paper title was superior plaintiff excepted.

The court defined adverse possession under color of title and charged in substance that if the plaintiff had shown by the greater weight of the evidence adverse possession of a portion of the land described in the conveyance under which he entered, his possession would be extended by construction of law to the outer boundaries of his deed, and, if so continued, openly, notoriously and adversely, as defined, for seven years, would ripen his imperfect or colorable title into a good one as to all the land described in his deed not actually occupied by the defendants.

Other instructions to the jury to which exceptions were noted were as follows:

"If the possession taken under the junior title is for a portion of the land so very minute and small that the true owner, even in the exercise of ordinary vigilance might remain ignorant that it included his land, or might mistake the character of the possession or the intention of the occupant, it might fairly be doubted that the deed should be held to extend beyond the actual boundaries. . . .

"So, gentlemen of the jury, if you had a deed for a hundred acres of land capable of being used as pasture, and you took your cow out and staked her off on a place in that land, just one little area where she could graze, you could not ripen title to one hundred acres and claim that you had used it to the extent of its ability to be used. On the other hand, if you put 75 or 100 head of cattle on that 100 acre tract so that they could roam all over it, even if for some reason they never went to one particular portion of the land, you could still ripen title to the whole 100 acres. . . .

"As I say, the defendants don't have to prove he had possession, but he (plaintiff) must prove affirmatively by the greater weight of the evidence that he had such possession as would indicate to the world an intention to claim the whole 375 acres for a period of at least seven years. If he has not done that, he cannot prevail.

"The defendants in reply say there has not been any such operations as would put the defendants or anybody else on notice that the plaintiff was claiming the mineral rights to this 375 acres of land. The defendants say when you consider the size of the opening of the dump, from one-fourth to one-half acre of land, and that to use or hold dominion over the mineral rights of an acre of land in 375 acres is not sufficient notice in which to put them or anybody else on notice that he was claiming the mineral rights over the whole 375 acres."

Just before the conclusion of the charge counsel for plaintiff addressed the court as follows: "As I understand, if the plaintiff or his representative mined any portion of this land sufficient to show his claim of ownership in that there being no possession by the other side, such acts will extend to his outer boundaries, under the Gilchrist case." Thereupon the court stated, "I gave what I conceived to be the law along that line. That would be dependent upon the size of that operation, even though it were just in one part."

The following issue was submitted to the jury: "Is the plaintiff the owner of and entitled to the possession of the minerals and mineral rights described in the complaint as alleged in the complaint?" For their verdict the jury answered the issue "No."

From judgment on the verdict plaintiff appealed.

*Charles Hughes, W. C. Berry, and Burke & Burke for plaintiff.*

*McBee & McBee, J. V. Bowers, and Proctor & Dameron for defendants.*

DEVIN, J. The plaintiff's asserted claim of title to the minerals and mineral rights in the land described in the complaint having been denied by the verdict and judgment below, he brings the case here for review, assigning error in the trial, and particularly in the judge's instructions to the jury on the determinative issue.

It is admitted that by deeds or reservations in deeds the surface and the mineral rights in the land have been segregated. Plaintiff's title to the surface rights therein are not controverted. By this action he seeks to establish his title also to the mineral rights, and to recover for valuable minerals alleged to have been wrongfully removed from the land by the defendants. In the absence of other means of proof of title to these minerals (*Mobley v. Griffin,* 104 N. C., 112, 10 S. E., 142), plaintiff bases his right to recover upon seven years' adverse possession and user of the minerals and mineral rights, under color of title, as provided by the statute, C. S., 428.

It is an established principle of law that when rights to the minerals in land have been by deed or reservation severed from the surface rights,

two distinct estates are created, and that the estate in the mineral interests, being part of the realty, is subject to the ordinary rules of law governing the title to real property. The presumption that one in possession of the surface has also possession of the minerals does not apply when these rights have been segregated. *Davis v. Land Bank,* 219 N. C., 248, 13 S. E. (2d), 417; *Vance v. Pritchard,* 213 N. C., 552, 197 S. E., 182; *Banks v. Mineral Corp.,* 202 N. C., 408, 163 S. E., 108; *Hoilman v. Johnson,* 164 N. C., 268, 80 S. E., 249. Plaintiff's entry into possession of the land, in 1925, having been under a deed purporting to convey the land by definite lines and boundaries, and without reservation or exception, his deed constituted colorable title to the entire interest and estate in the land, in accord with the maxim, *cujus est solum, ejus est usque ad coelum et ad inferos.* 25 C. J. S., 20. The question then presented and sharply controverted was whether plaintiff's acts of ownership and occupancy of the minerals and mineral rights were sufficient to constitute adverse possession as defined in the law for the statutory period, so as thereby to vest in him a good title. What constitutes adverse possession has frequently been considered by this Court, and the opinions in the decided cases contain comprehensive definitions of the meaning of the term in the law of real property, notably in *Berry v. Coppersmith,* 212 N. C., 50, 193 S. E., 3; *Locklear v. Savage,* 159 N. C., 236, 74 S. E., 347; *Currie v. Gilchrist,* 147 N. C., 648, 61 S. E., 581. Possession of real property to be adverse must be actual possession, and must be open, decided and notorious as the nature of the property will permit, indicating assertion of exclusive ownership, and of intention to exercise dominion over it against all other claimants. The possession must be continuous, though not necessarily unceasing, for the statutory period, and of such character as to subject the property to the only use of which it is susceptible. *Locklear v. Savage, supra; Davis v. Land Bank, supra.*

It is also well settled that where one enters into possession of land under a colorable title which describes the land by definite lines and boundaries, and occupies and holds adversely a portion of the land within the bounds of his deed, by construction of law his possession is extended to the outer bounds of his deed, and possession so held adversely for seven years ripens his title to all the land embraced in his deed which is not actually occupied by another. *Currie v. Gilchrist, supra;* 1 Am. Jur., 909.

Plaintiff excepted to the judge's instruction to the jury with respect to the extent of the portion of the property adversely occupied and possessed under color which would be sufficient to constitute constructive possession of the whole, and complains that the court's language tended to convey to the jury the impression that mere smallness of the area occupied would prevent the application of the principle of constructive possession. It

appears from the record that the court instructed the jury in this connection, if the possession was of a portion "so very minute and small that the true owner in the exercise of ordinary vigilance might remain ignorant that it included his land or might mistake the character of the possession or the intention of the occupant, it might fairly be doubted that the deed should be held to extend beyond the actual boundaries (occupancy)." We think this statement of a principle of law applicable to slight and unintentional encroachment upon adjoining lands under a mistake or misapprehension as to the true dividing line (*Currie v. Gilchrist, supra*), was likely to be misunderstood by the jury when considered in the light of the facts of this case where the evidence tended to show continuous operation by the plaintiff of three or four mines or openings of comparatively small area on the entire tract, and as indicating the expression of a doubt in the mind of the court that such possession was in law sufficient to extend the possession beyond that actually occupied.

This impression was doubtless strengthened by the court's final word to the jury, when, in response to inquiry from counsel as to the application of the rule of constructive possession to the mining of a portion of the land, he stated, "I gave what I conceived to be the law along that line. That would depend upon the size of that operation even though it were just in one part." Also we think the illustration which the able judge gave for the purpose of explaining the legal principles involved, was susceptible of inferences as to the facts in this case beyond that which he intended. It was not a question of the extent of the possession but of its character. *Green v. Harman,* 15 N. C., 158. The instruction that plaintiff must prove that he had such possession as would indicate to the world an intention to claim the whole 375 acres, inadvertently overlooked the fact that plaintiff disclaimed title to the mineral rights in 68 acres embraced within the bounds of the 375 acre tract.

Under the circumstances of this case we think the instructions to the jury complained of, in the respect herein noted, must be held for error, and that this was sufficiently material and prejudicial to require a new trial.

The plaintiff's exception to the admission of the will of George Leask as one of the links in defendants' chain of title to the mineral interests in the land is without merit. The will appears to have been proven in New York in the manner prescribed by the North Carolina statutes, and the copy or exemplification of the will so showing, duly certified, was admitted to record in Avery County. C. S., 4152; *Vaught v. Williams,* 177 N. C., 77, 97 S. E., 737. That the corporate name of defendants' grantor was amended in accord with the New York statute appears from the recitals in the deed.

Defendants' contention that the judgment in this case should be affirmed for the reason that plaintiff failed to make out a case of continuous adverse possession for the statutory period cannot be sustained. We think the plaintiff's evidence, considered in the light most favorable for him, was sufficient to require submission of the case to the jury.

Other exceptions brought forward in plaintiff's assignments of error are not discussed or decided as they may not arise upon another trial.

For the reasons stated there must, be a

New trial.