W. D. BALTZLEY AND NORTH STATE GEM MINING, INC. v. C. RAY
WISEMAN

No. 7524SC535

(Filed 17 March 1976)

**1. Estates § 1; Mines and Minerals § 1— severance of mineral rights**

When mineral rights in land are by deed or reservation severed
from the surface rights, two distinct estates are created, and the
estate in the mineral interests, being part of the realty, is subject
to the ordinary rules of law governing the title to real property.

**2. Mines and Minerals § 1— mineral rights — selling permits to rock-
hounds**

An 1899 severance deed conveying the "Mineral Right" in a three-
acre tract of land with the privilege of using timber growing on the
tract "for mining Purposes only & for fire Wood Building houses for
Mine and tools Store houses etc.," together with a right-of-way to the
public highway, conveyed to the grantee or his assigns the right to
conduct on the land a conventional mining operation, and the present
owner of the mineral estate had no right, without the concurrence of
and over objections of the owner of the surface, to sell permits to
"rockhounds" to come upon the land to search for and take mineral
specimens therefrom.

APPEAL by plaintiff from *Martin (Harry), Judge.* Judg-
ment entered 17 February 1975 in Superior Court, MITCHELL
County. Heard in the Court of Appeals 16 October 1975.

The individual plaintiff, W. D. Baltzley, brought this civil
action against defendant to obtain monetary damages and in-
junctive relief, alleging that defendant had unlawfully inter-
fered with plaintiff's mining rights on a described three-acre
tract of land in Mitchell County known as the "Aquamarine
Locality." Defendant, who is fee simple owner of the tract in
question subject to the mineral rights conveyed by his predeces-
sors in title, Martin D. Wiseman and wife, to one Edwin
Passmore by deed dated 3 November 1899 recorded in Mitchell
County Deed Book 35, page 346, denied he had unlawfully inter-
fered with mining operations carried on in accordance with the
provisions of said deed, denied plaintiff ever attempted such
mining operations, and alleged plaintiff was attempting to con-
duct on the property the business of selling permits to "rock-
hounds" as provided in a lease agreement dated 19 July 1973
from North State Gem Mining, Inc., the present owner of
the mineral rights in the property, as lessor to plaintiff Baltzley
as lessee. North State Gem Mining, Inc. joined in this action as

a party plaintiff and adopted the complaint filed by the individual plaintiff.

The 1899 Wiseman deed to Passmore, recorded in Deed Book 35, page 346, Exhibit "A" to defendant's answer, in pertinent part provided that Wiseman and wife conveyed to Passmore, his heirs and assigns,

> "[T]he Mineral Right to a certain tract or Parcel of Land in Grassy Creek Township Mitchell County State of North Carolina Bounded as follows a certain three Square acres of Land Containing What is Known as the aquamarine Locality Lying on the South East Corner of the Property belonging to Martin D. Wiseman Beginning [there then follows a metes and bounds description of the three-acre tract here in question]. Party of the first Part herewith Grants to Party of the Second Part the Privelige [sic] of ussing [sic] timber Growing on above Described Parcel of land for mining Purposes only & for fire Wood Building houses for Mine and tools Store houses etc. Each Party to have the right of to and from and over Said tract of land to Public Highway."

The lease dated 19 July 1973 from North State to Baltzley, Exhibit "B" to defendant's answer, was for an initial term commencing 20 July 1973 and ending 31 December 1977, with option in the lessee to renew for an additonal five-year period. It provided that the lessee should "continue to mine the property for the period April 15 through October 15 of each year," that he should keep accurate records and render monthly statements showing the amount of material extracted from the property, and that he should "pay to the Lessor twenty (20%) percent of the total value extracted." Paragraphs 5 and 6 of the Lease are as follows:

> "5. Rockhounds.
>
> "During the period mentioned above, i.e., April 15 through October 15 of each year, the Lessee shall keep the mining property open and shall maintain the property in a condition to attract individuals wishing to enter the area to search for minerals or stones within designated areas, said areas to be determined by the Lessee. The Lessee shall charge a fee for such individuals wishing to mine the premises. The Lessee shall further keep accurate accounts of all funds received as admission fees from such individuals and

shall render monthly statements of such funds to the Lessor and, in addition, shall pay to the Lessor sixteen (16%) percent of the total of such fees.

"6. Stockholders.

"The Lessee shall admit to the premises, without fee, stockholders of the Lessor for the purpose of allowing such stockholders to search for minerals or stones within the designated areas in the manner that other rockhounds are allowed to search for stones. All stockholders seeking admittance to the premises shall exhibit to the Lessee, his agents or his employees, current identification cards identifying the holder as a bona fide stockholder of the Lessor."

The case was tried by the court without a jury. The parties stipulated that the mineral rights conveyed by the 1899 Wiseman deed to Passmore recorded in Deed Book 35, page 346, are now owned by plaintiff North State, that defendant is the owner of the tract subject to the mineral rights of North State, and that the lease dated 19 July 1973 from North State to Baltzley was duly executed and is binding on all the parties thereto. The parties also stipulated that the first question involved in this case is "whether or not Paragraph 5 of the Lease Agreement is a lawful activity within the terms of the Deed in Deed Book 35, Page 346."

Plaintiff Baltzley testified that an underground mine had been operated on the property from about 1904 to 1910 and that there was on the tract a shaft going approximately 114 feet deep into the ground. Plaintiff Baltzley testified he had had extensive experience with rock collectors and rock collecting throughout the whole country and that "[r]ockhounding or rock collecting means a person who is interested for one reason or another in going out and gathering raw materials either for cutting or selling for marketing. . . . " Plaintiff also testified:

"With reference to the Wiseman Aquamarine locality, the major part of the rock collecting operation would be the mining of material and bringing it to the surface. There is where the rock collector will take over. Some of them will pay a fee and scratch around in the debris when it is brought to the surface and from that they recover the things they are looking for. That is part of the operation. The debris I am talking about would be right at the entrance to the mine. . . .

Baltzley v. Wiseman

"In looking for minerals rock hounds use the tools that we supply them and these tools are a screen and a shovel. The screen is about the size of a soft drink box with a screen on the bottom that sifts the fine stuff out and leaves the rock. Water is used for this purpose. For instance, the collectors are given a designated area where they can perform this action with a screen by shoveling dirt into the box and we provide a small settlement basin as a supply of water. The rest of it is up to them to sort out the things they want to keep, and we did or would charge a fee of five dollars a day to each person who did that.

"Rock collectors, in my experience, are a cross section. Some would be dealers and some families interested in their own personal satisfaction they got out of the lapidary hobby, maybe polishing and maybe selling. The people who come to look for minerals would not stay any given time and the number of people at the Wiseman Aquamarine locality on any given day could vary. The largest number that we have had at this particular mine on any given day is twenty-three and the smallest number on any given day would be one."

Plaintiff also testified that in his experience with rock collectors at a previous operation he had "something like ten thousand a year."

W. H. Collins, a witness for plaintiffs, testified that he managed the Wiseman Aquamarine Mine for five months, from May until September, in 1972, during which time the rock collectors were there every day and that on any given day they "would have out there as rock collectors thirty to eighty people." He also testified that he sold permits to adults for $3.00, that the minimum age he considered an adult was twelve years, and that "[i]t is correct to say that what everyone did was engage in selling permits and assisting the rock hounds."

At the close of plaintiffs' testimony, defendant moved for dismissal under G.S. 1A-1, Rule 41(b), on the ground that upon the facts and the law the plaintiffs had shown no right to relief. The court granted the motion and entered judgment making findings of fact, including findings that plaintiff Baltzley "has attempted to engage in activities provided for in paragraph 5" of the 19 July 1973 lease from North State and

that the 1899 deed recorded in Deed Book 35, page 346, "does not authorize or grant to the plaintiffs the right to conduct the activities described in paragraph[s] 5 and 6" of the lease between North State and Baltzley. From the judgment dismissing their action, plaintiffs appealed.

*Dameron & Burgin by E. P. Dameron for plaintiff appellants.*

*Lloyd Hise, Jr., Staunton Norris and G. D. Bailey for defendant appellee.*

PARKER, Judge.

The question presented is whether North State Gem Mining, Inc., as the present owner of the mineral rights conveyed by the 1899 severance deed, has the right to conduct on the land or to grant to another the right to conduct thereon a "rockhound" business such as is contemplated by paragraph 5 of the lease from North State to Baltzley. We agree with the trial court that it does not.

[1] When mineral rights in land are by deed or reservation severed from the surface rights, two distinct estates are created, and the estate in the mineral interests, being part of the realty, is subject to the ordinary rules of law governing the title to real property. *Vance v. Guy,* 223 N.C. 409, 27 S.E. 2d 117 (1943). Each estate is a freehold estate of inheritance separate from, and independent of, the other. 54 Am. Jur. 2d, Mines and Minerals, § 116. Due to the unique nature of these independent estates in the same land, the owner of the surface and the owner of the minerals must each necessarily exercise the rights which go with his separate title with due regard for the rights of the other. "The surface owner may use and deal with his property in any legitimate manner not inconsistent with the rights acquired by the owner of the minerals. . . . Conversely, the owner of the minerals has a limited right to use the surface in reaching and removing the minerals." 54 Am. Jur. 2d, Mines and Minerals, § 148, p. 330.

[2] In the present case the parties stipulated that whatever rights Passmore, the grantee in the 1899 severance deed, may have received pursuant to that deed were subsequently conveyed to North State. Those rights were the "Mineral Right" in the three-acre tract here in question together with the privilege of using timber growing on the tract "for mining Purposes only & for fire Wood Building houses for Mine and tools Store houses

Baltzley v. Wiseman

etc.," together with a right-of-way to the public highway. Clearly, the parties to the 1899 deed contemplated that the grantee or his assigns might conduct on the land a conventional mining operation, and there was evidence that such an operation was conducted on the land during the decade following execution of the deed. Necessarily the separate estate retained by the owner of the surface was subject to and burdened by such uses of the surface as were entailed in the conduct on the land of such a conventional mining operation. Now, however, North State, or more accurately its lessee, Baltzley, seeks to conduct on the land a totally different business, that of selling daily permits to "rockhounds" (i.e., any persons who for whatever reasons of their own, are interested in searching for and collecting mineral specimens of various types), to come upon the land to search for and take mineral specimens therefrom. The success of such a business depends on the number of such persons who can be induced to buy permits to come upon the land, and there was evidence that a substantial number of persons were attracted daily to come upon this three-acre tract in a rural area. Certainly such an activity relates to the "Mineral Right" in the land, and no person, whether a "rockhound" or another, could lawfully remove minerals from the land without permission from the owner of the mineral estate. But that ownership alone does not give to the owner of the minerals the right to subject the estate of the owner of the surface to the burden of a use radically different in nature and extent from anything contemplated by the parties when the ownership of the two estates was severed by the 1899 deed.

"Rockhounding" is a wholesome activity which in recent years has grown rapidly in popularity and has attracted to its ranks an increasing number of persons. Certainly nothing in this opinion is intended to denigrate that activity or those who engage in it. We are here concerned only with the legal question of whether the present owner of the mineral estate granted by a particular 1899 severance deed has the legal right, without the concurrence of and over the objections of the owner of the surface, to grant to rockhounds the right to go upon the land. We agree with the trial court that it does not.

The judgment dismissing plaintiffs' action is

Affirmed.

Judges MARTIN and MORRIS concur.